**UNITED STATES of America, Plaintiff,**

v.

**Donald M. HEAVRIN, Defendant.**

**No. CRIM.A.3:99CR–113–H.**

United States District Court,
W.D. Kentucky,
at Louisville.

July 31, 2001.

Scott C. Cox, Rob Eggert, Louisville, KY, for plaintiff.

Donald M. Heavrin, Louisville, KY, pro se.

Marisa J. Ford, AUSA, United States Attorney's Office, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

After dismissal of all the criminal charges in this case, Defendant moved for attorney's fees and costs pursuant to the Hyde Amendment, Pub.L. No. 105–119, 11 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes) and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (2001).[1] The Hyde Amendment allows the Court to award fees and costs to a prevailing criminal defendant where "the position of the United States was vexatious, frivolous, or in bad faith unless the court finds that special circumstances make such an award unjust." 11 Stat. at 2519. The Court has thoroughly reviewed its reasons for the acquittal, taking care to reevaluate and restate its opinion previously delivered from the bench. That Memorandum of Acquittal is now part of the record of this case and shall constitute the opinion of this Court, providing a foundation for consideration of the pending motion.

The focus of this Memorandum Opinion is the merit of Defendant's Hyde Amendment claim with respect to the four basic charges brought against him: (1) fraudulently transferring and concealing property belonging to Triple S Restaurants, Inc. ("TSR"), in contemplation of TSR's bankruptcy in violation of 18 U.S.C. § 152(7); (2) concealing property belonging to the estate of TSR from the U.S. trustee and the bankruptcy court in violation of 18 U.S.C. § 152(1); (3) committing criminal contempt under 18 U.S.C. §§ 401(3) and 402 by selling certain assets in violation of an order by the bankruptcy court; and (4) lying under oath in relation to a bankruptcy case in violation of 18 U.S.C. § 152(2). Since the money laundering charges are derivative of these charges, the Court need not consider them separately.

The United States has argued professionally and with great conviction that the indictments were justified. The Court has drawn all reasonable inferences in favor of

---

1. The Hyde Amendment provides in full:

 During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of the enactment of this Act [Nov. 26, 1997], may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code. To determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal. Fees and other expenses awarded under this provision to a party shall be paid by the agency over which the party prevails from any funds made available to the agency by appropriation. No new appropriations shall be made as a result of this provision.

the government. The Court is mindful that bankruptcy fraud often involves many complex issues which take time and effort to understand and that the Hyde Amendment was not meant to chill the government's vigorous enforcement of the laws of the United States. Notwithstanding all this, the Court finds a conspicuous absence of any supporting law or evidence on several important elements of the indictment.

### I.

Absent an express waiver of sovereign immunity, the United States is immune from claims for attorney's fees. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). Any such waiver must be strictly construed in favor of the sovereign. *Id.* By the Hyde Amendment, Congress waived the government's immunity from suit by prevailing criminal defendants in specific, limited circumstances.

The Hyde Amendment conditions the award of attorney's fees on a defendant's compliance with the procedural limitations of the EAJA. *See United States v. Ranger Electronic Communications, Inc.,* 210 F.3d 627, 633 (6th Cir.2000). The relevant procedures for a Hyde Amendment claim are those set forth in 28 U.S.C. § 2412(d). *Id.* That subsection provides:

A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed.

§ 2412(d)(1)(B). A "party" is an individual whose net worth did not exceed two million dollars at the time the civil action was filed. § 2412(d)(1)(C)(2)(B). In *Ranger,* the Sixth Circuit held that the thirty-day time limitation is a jurisdictional prerequisite to governmental liability. 210 F.3d at 631 (quoting *Allen v. Secretary of Health & Human Services,* 781 F.2d 92, 94 (6th Cir.1986)). *Ranger* considered only the thirty-day filing period and did not hold that all the procedural requirements set forth in § 2414(d) were jurisdictional. This Court concludes the requirement that a defendant state his net worth does not exceed $2,000,000 is not jurisdictional and may be cured after the thirty-day limit. *See United States v. Gardner,* 23 F.Supp.2d 1283, 1293 (N.D.Okla.1998) (technical deficiencies in a fee application may be cured if untimely filed) (citing *Lee v. Johnson,* 799 F.2d 31, 35 n. 4 (3d Cir. 1986)).[2]

The Hyde Amendment requires a defendant to prove, by a preponderance of the evidence, that the position of the United States was frivolous, vexatious, or in bad faith. *United States v. Truesdale,* 211 F.3d 898, 908 (5th Cir.2000). Liability

---

**2.** At the threshold, the United States argues that Defendant is barred from asserting his claim because he did not comply with the procedures of the EAJA. Defendant's initial claim was filed within thirty days of this Court's final judgement in the criminal matter but this claim did not state Defendant's net worth and did include an itemized statement from the attorney's representing Defendant. In his Reply, filed more than 30 days after his acquittal, Defendant states that his net worth did not exceed two million dollars at any time and his attorneys may provide itemized statements of their fees for those counts on which Defendant has shown the Government's position to be frivolous, vexatious, or in bad faith. Having provided the Government with timely notice of his claim, *Ranger* does not bar these technical deficiencies in Defendant's claim.

may follow proof that the government's position meets any one of these standards. *United States v. Pritt*, 77 F.Supp.2d 743, 747 (S.D.W.Va.1999).[3]

■ Courts have struggled to define the terms frivolous, vexatious, and bad faith; often discussing in great detail various comments from the House floor debate as well as reports and commentary from legal newspapers. *See, e.g., Gilbert*, 198 F.3d at 1299; *Truesdale*, 211 F.3d at 908–09. Since these sometimes contradictory comments and reports were neither subject to a vote by Congress nor signed into law by the President, they offer little authoritative guidance. The plain terms of the statutes at issue, however, illustrate that by replacing the EAJA language, "not substantially justified" with "frivolous, vexatious, or in bad faith," Congress imposed a higher burden on defendants than merely requiring them to show the government did not have a strong or substantial basis for its position. *Truesdale*, 211 F.3d at 909. The Conference Report on the Hyde Amendment makes clear that "a grand jury finding of probable cause to support an indictment does not preclude a judge from finding the government's position was vexatious, frivolous or in bad faith." 134 Cong. Rec. H10809–01, H10863 (Nov. 13, 1997), 1997 WL 712946; *Gardner*, 23 F.Supp.2d at 1293. On the other hand, the standard for granting a judgment of acquittal at trial is lower than that for a successful Hyde Amendment claim. *Pritt*, 77 F.Supp.2d at 748; *United States v. Reyes*, 16 F.Supp.2d 759, 761 (S.D.Tex. 1998).

The Court must locate the meaning of "frivolous," "vexatious," and "bad faith" within this general compass. In *Gilbert*, 198 F.3d at 1298–99, the court found that "vexatious" means without probable cause or without foundation, even though not brought in subjective bad faith (citing Black's Law Dictionary, 1559 (7th Ed.1999) and *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)); "frivolous" means groundless and with little prospect of success brought primarily to embarrass or annoy the defendant, *Gilbert*, 198 F.3d at 1299; and "bad faith" is the conscious doing of a wrong because of a dishonest purpose, a furtive design, or ill will, requiring more than bad judgment or negligence. *Id.*

■ Applying these general principles to the case at hand, this Court determines that a frivolous charge is either one without some legal precedent for the government's position or, if legally sound, a charge brought without a reasonable expectation of evidence at trial to support this position. The government need not have actual evidence before bringing charges, only a reasonable expectation of attaining it at trial.

Defendant has presented no evidence that the government had a dishonest purpose or otherwise acted in bad faith and evidence only that Count Nine was vexatious. He does, however, raise credible questions about whether the government's position so lacked a basis in law or fact as to be frivolous.

II.

For purposes of this motion, Counts One and Two are closely related because they involve some common evidence and similar legal issues. Indeed, Counts One and Two seem to merge, forming allegations of a single and broad fraudulent scheme. Heavrin's blindness to appearances and ethical lapses creates suspicion. The un-

---

**3.** The standard for obtaining attorney's fees in a criminal case is, therefore, more demanding than that for a civil case. Under the EAJA, a prevailing party in a civil case may be entitled to fees unless the government's position was substantially justified. 18 U.S.C. § 2412(d).

usual nature and large amount of Heavrin's settlement with MDFC would raise questions in the mind of a bankruptcy trustee and certainly to a casual observer. However, when bringing a criminal indictment the government is more than a casual observer. The Court must examine each count for the law and potential evidence supporting each element of the crimes charged.

### A.

The troubling aspect of the Count One fraudulent transfer charge is the complete absence of factual evidence to suggest that Heavrin concealed the transfer. In its memoranda, the government fails to address this crucial issue, instead arguing at length that the insurance proceeds were property of the bankruptcy estate because the only viable theory for MDFC's settlement is a proportionality theory, not a lender liability theory. In its original statement of acquittal, and again today, the Court accepts as true the theory that the policy proceeds were property of TSR's bankruptcy estate. However, a lot more was required to make a viable case of fraudulent transfer.

Whether the government's case on Count One was so groundless that it is frivolous is a close question. There was evidence of motive (as a beneficiary of the trust Heavrin stood to gain whatever was left of the insurance proceeds after MDFC claimed its share), and opportunity (as TSR's counsel and as the source of the referral to bankruptcy attorney, Daniel Chinn, Heavrin had influence over TSR's affairs). Heavrin took advantage of his opportunity and seems to have paid little attention to the potential conflict between his personal interests and fiduciary duties to TSR. On the other hand, no evidence suggested that Heavrin concealed the transfer. In particular, the government never indicated it had any other evidence showing Heavrin acted intentionally to deceive the trustee or the bankruptcy court and, as a consequence, the evidence fell short of proving causation.

■ This evidence was indeed insubstantial ground upon which to put a man's liberty in jeopardy. However, given the strict standard by which waivers of sovereign immunity are to be construed, the government's case on Count One was not completely without foundation. Any other indicia of an intent to defraud could have allowed this count to go to a jury and there were several sources by which the government could have believed such evidence would come out at trial. The Hyde Amendment does not require the government to have a strong or substantial basis before bringing charges—only a non-frivolous basis. Defendant has not proven that Count One was without basis in law or fact.

### B.

Unlike fraudulent transfer charge, Count Two's charge required the government to prove an affirmative act of concealment. Fraudulent concealment is ordinarily proven by showing that someone who had a specific duty to list certain property on the bankruptcy petition intentionally failed to do so. The Court cannot attach such a specific legal duty to Heavrin. Absent such a legal duty, the Court assumed that the government would introduce evidence that Heavrin caused or conspired to cause the $252,000 insurance proceeds to be omitted from the bankruptcy filings. It did not do so.

The United States argues that Heavrin's close association with TSR—"as an agent for the corporation, its corporate counsel, and an insider within the meaning of the Bankruptcy Code, as stepson of one of the two principal owners of the company"— imposed on him an affirmative legal duty to disclose the $252,000. In support of this claim the government cites *United States*

*v. Ross,* 77 F.3d 1525, 1548 (7th Cir.1996), which states that 18 U.S.C. § 152 "broadly criminalizes" bankruptcy fraud and, by its own terms, applies to "[w]hoever, either individually or as an agent or officer of any person or corporation ... with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals ... property belonging to the estate of the debtor [violates this section]." As a literal statement this is true. However, the government goes a step further, contending that § 152 requires corporate insiders to take specific affirmative action to prevent a misrepresentation.[4] Such an interpretation dramatically expands criminal liability under § 152. The government adopts this position without citing a single case—other than *Ross*—to support its position.

■ This Court has carefully examined *Ross,* which the government relies upon as its exclusive authority. That case, this Court must conclude respectfully, does not provide a sufficient legal basis to support the criminality of Heavrin's conduct. First, the *Ross* court merely refuses to adopt the narrowest reading of 18 U.S.C. § 152—that § 152 only applies to the actual bankrupt. It addresses neither the outer limit of criminal liability nor the nature of affirmative conduct which creates such liability. *Ross* is not affirmative authority for the proposition that § 152 criminalizes the conduct at issue here. In short, the United States gives an overly expansive reading to rather general language in *Ross*. Second, the facts of *Ross* differ significantly with those at bar and, therefore, its holding is not applicable to our facts. In *Ross,* the defendant founded the corporation at issue, served as its president, and wholly owned the company. In contrast,

Heavrin did not create TSR, was not an officer, and had no ownership interest. Third, the rule of lenity, a basic canon of criminal law, precludes the expansive reading of ambiguous criminal laws. *See, e.g., Reno v. Koray,* 515 U.S. 50, 64–65, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (explaining circumstances in which rule of lenity applies); *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971) (holding that the "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity"). Given this clear background rule, the United States needs significantly more authority than a lone, factually-distinguishable, nonbinding court of appeals decision to bring a criminal prosecution. *Ross* simply does not support this indictment.

■ Charges may be brought only where there is a clear legal basis for the assertion that certain conduct is criminal. *See United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 ("a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so fair as possible the line should be clear") (quoting *McBoyle v. United States,* 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931) (Holmes, J.)). The Court would not fault the government for adopting a legal position where the issue is one of first impression and various circuits have taken different positions. *United States v. Gilbert,* 198 F.3d 1293, 1303 (11th Cir.1999). However, the government cannot adopt novel legal positions as the basis for a criminal indictment without asserting credible authority for those positions.[5]

---

4. The Court stated in its Memorandum of Acquittal, absent an affirmative act of concealment, the language of § 152 does not impose a specific duty on all corporate insiders of bankrupt corporations to verify the accuracy of the corporation's bankruptcy petition.

5. This admonition seems particularly appropriate where robust civil mechanisms exist to correct or test these alleged misdeeds.

The Court finds no legal foundation for the government's position that Heavrin personally had an affirmative duty to disclose the proceeds of the life insurance policy on TSR's bankruptcy petition.

Of course, someone in Heavrin's position can violate bankruptcy fraud laws. Were the government able to produce *some* evidence that Heavrin caused Chinn or Macatee to violate their duty to list the $252,000 on the petition, or that Heavrin caused MDFC to fail to timely amend its proof of claim to reflect receipt of the $252,000, that would be evidence of fraud. But the government produced no such evidence at trial. As best the Court can tell, neither Chinn nor Macatee ever told governmental investigators that Heavrin sought to influence either one. Considering this, it was understandable that the government did not call Chinn as a witness. Without some basis for believing that such evidence would come out at trial, the government's case wholly lacked evidence establishing an essential element of the crime.

During discussions with the Court, the government emphasized two incriminating circumstances: Heavrin's settlement of the MDFC claim allegedly on the basis of a proportionate liability theory; and Heavrin's apparent failure to list the $250,000 insurance payment on either his father's estate tax return or his state inheritance return. They argue that these circumstances show that Heavrin was trying to conceal his fraud. To be sure, one might view these circumstances as suspicious. Each suggests a reason to investigate further. However, neither tends to prove that Heavrin was attempting to defraud the TSR bankruptcy estate. Neither is evidence of the remaining critical component of the government's case: that Heavrin caused TSR and MDFC to omit listing of the Harrod Policy transactions. Neither supports an indictment.

■■■ With no legal basis for the government's proposed expansion of the legal duty to disclose facts on the bankruptcy petition, such evidence of causation is the only possible basis for Count Two. In the absence of any evidence linking Heavrin to Chinn's, Macatee's, or MDFC's failure to list the $252,000 on TSR's bankruptcy petition or proof of claim, Count Two has no factual basis and is therefore frivolous.

### III.

Count Seven charged Heavrin with committing criminal contempt by violating the bankruptcy court's order not to sell any of his assets except for living and business expenses. As trustee and beneficiary of various trusts, Heavrin controlled forty percent of a company called Total Vend. The government alleged that Heavrin violated the Court's order when Total Vend sold a large portion of its physical assets for several hundred thousand dollars cash and additional payouts over a period of years.

The substantive legal arguments soundly support Heavrin's position. Heavrin owned shares of the corporation, not vending machines or accounts receivables. It is axiomatic that a corporation's assets are distinct from the assets of individuals who own stock in the corporation. Without some showing that Total Vend was Heavrin's alter ego, that the sale was not duly authorized by the corporation, or that Total Vend co-mingled its assets with Heavrin's, there is very little to support the charge of criminal contempt.

■■■ The government's failure to produce anticipated evidence will not make its position frivolous. A charge is frivolous only if brought without any reasonable foundation in law or anticipation of material facts. The government argues that, "[t]hough, technically, Heavrin's assets in the corporation were his shares, the bank-

ruptcy court would more likely have been concerned about preserving the corporation's underlying tangible assets." Criminal contempt requires the government to prove that Heavrin had violated an order that is clear and unambiguous. *United States v. NYNEX Corp.,* 8 F.3d 52, 54 (D.C.Cir.1993). The bankruptcy court's order clearly ordered Heavrin not to sell or transfer his own assets. The order does not mention Total Vend's assets. While the bankruptcy court may have intended to apply its order to Total Vend's assets, a court's tacit intentions cannot serve as a basis for a charge of criminal contempt. The government did not attempt to prove Total Vend was Heavrin's alter ego or that he so controlled the company that its assets were his own.

In the alternative, the government says that by selling Total Vend's assets to a third party, Heavrin's shares were left valueless, an "empty shell," thus violating the spirit and intent of the order. Perhaps Heavrin would have violated the order if his actions had fraudulently drained all value from his shares. The government, however, presented no evidence that Heavrin's Total Vend shares were worth less after the sale than before it. Nor was this an argument which the United States pursued at trial. Moreover, any proceeds of the sale which Heavrin did receive would then be covered by the bankruptcy court's order.

The order itself prohibits Heavrin from selling any asset held "individually, jointly or in any other capacity." As applied to Total Vend shares, at best it is rather imprecise. Under these circumstances an order so ambiguous cannot be the basis of criminal charges. Moreover, civil remedies were available that are faster and more appropriate. This charge had no legal or factual basis.

## IV.

 Count Nine charges that Heavrin lied during a November, 1998, deposition related to an adversary proceeding in bankruptcy court. The government alleged Heavrin said he had no ownership interest in Total Vend when, in fact, he had an individual ownership interest in Total Vend as a shareholder. Heavrin did respond to the deposer's question, "And what percentage do you own of [Total Vend]?" saying, "I don't own any of it." When considering alleged perjury, one must consider any statement in its full and reasonable context. *See Bronston v. United States,* 409 U.S. 352, 359, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) ("A jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner . . ."); *United States v. De Zarn,* 157 F.3d 1042, 1048 (6th Cir.1998). Within one page in the same deposition, Heavrin explains that he did initially owned shares in Total Vend, but that he transferred those shares to a trust fund established for his sons.

The government knew that in October, 1999, when Total Vend sold, Heavrin was listed as an individual shareholder. The government asked another shareholder, Kay Sternenberg, whether Heavrin had placed his shares in trust and she replied that she had not heard anything about a trust. On this basis, the government obtained its indictment. Without any more apparent investigation the government assumed that because Heavrin owned shares in Total Vend sometime prior to his deposition and because he owned the shares one year after his deposition, that he owned those shares during his deposition.

At trial, Heavrin introduced Total Vend stock certificates supporting the truthfulness of his statement showing that a revocable trust owned the shares during the

deposition. The government did not attempt to show that this trust was a sham or legal fiction. It did not suggest that the documentation was false or fraudulent. Instead, the government voluntarily dismissed the charges.

The government maintains that had Heavrin disclosed these exculpatory documents prior to trial, it would have dropped this charge. Heavrin, of course, had no duty to assert affirmative defenses prior to trial. The government has a duty to investigate and establish *some* factual basis for its position *prior* to bringing criminal charges. As far as the Court can tell, Heavrin told the truth. The government could have tested the truth of Heavrin's deposition testimony by acquiring these stock certificates prior to seeking an indictment. Instead, it added these charges to the indictment without any apparent evidentiary basis. That criminal conduct was one of several explanations for the course of events as understood by the government does not relieve the government of the obligation to investigate whether the facts support a finding of probable cause that Heavrin committed this crime. By any measure, Count Nine of the Superceding Indictment was without merit and frivolous.

## V.

Determining the amount of attorney's fees due under the Hyde Amendment is complicated by two factors: the Court finds only three of the charges to be frivolous and Heavrin has provided insufficient detail regarding his attorney's fees.

Heavrin may not receive reimbursement for his own time or normal office overhead devoted to his defense. *Kay v. Ehrler*, 499 U.S. 432, 437–38, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991) (pro se litigant who was an attorney may not recover attorney's fees in civil rights action); *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2nd Cir.1994) (holding that *Kay's* prohibition of attorney's fees to pro se attorney litigant controls EAJA claims). Fees incurred by attorneys Heavrin hired to defend him of these charges, regardless of whether they entered a formal appearance at trial, may be reimbursed. *But cf. United States v. Eleven Vehicles*, 966 F.Supp. 361, 367 (E.D.Pa.1997) (non-attorney pro se plaintiff who hired attorney to assist with research and drafting pleadings is not entitled reimbursement under EAJA for attorney's fee). Any such fees will be capped at $125.00 an hour and flat fees will be converted to an hourly rate by dividing the total flat fee by the hours worked before applying this cap. 28 U.S.C. § 2412(d)(2)(A).

By virtue of its involvement throughout the case, the Court is well acquainted with the time and effort required to defend the allegations contained in the various indictments. Counts One and Two, as well as the underlying money laundering counts, allege separate aspects of a larger fraudulent scheme. The proof as to each was interrelated. Some evidence was relevant to both counts. Other evidence concerned only one or the other. The legal considerations were distinct, but of similar complexity and magnitude. Heavrin would have incurred significant expenses even to defend only Count One, even though eliminating Count Two would have significantly simplified the defense. Notwithstanding this discussion, Heavrin has provided little assistance as to how the Court might apportion his expenses.

Heavrin has simply provided insufficient documentation from which the Court may determine the amount of Heavrin's reasonable attorneys' fees and the allocation of it among the counts. In its order, the Court will allow Heavrin until a date certain to provide complete and appropriate documentation and to advise the Court how the

total fees should be allocated among various counts. Heavrin may be reimbursed for a flat or lump sum fee arrangement. As provided by 28 U.S.C. § 2112(d)(B), Heavrin must provide documentation of the fee arrangement and an itemized or authenticated statement from any attorney representing Heavrin stating, with reasonable specificity, the actual time expended (both the total time and the proportion of time devoted to each count) and the rate (or flat fee) Heavrin was charged. Heavrin has not met his obligation to provide this information.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendant has moved for attorney's fees and costs pursuant to 28 U.S.C. § 2412(d). The Court has considered the motion and has issued a Memorandum Opinion. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant is entitled to attorney's fees and costs related to the charges contained in Counts Two and Eight of the Third Superceding Indictment; however, only upon appropriate documentation of the amounts and allocation.

IT IS FURTHER ORDERED that Defendant shall have to and including **August 16, 2001,** to properly document his request for attorney's fees and costs. Proper documentation will indicate both the total amount of fees and costs and the relative proportion of these totals devoted to defending each of the four underlying counts. On or before **August 28, 2001,** the United States may respond.

IT IS FURTHER ORDERED that all other pending motions are MOOT.