RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0169P (6th Cir.)
File Name: 03a0169p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

  *v.*

DONALD HEAVRIN,
  *Defendant-Appellee.*

No. 01-6565

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 99-00113—John G. Heyburn II, Chief District Judge.

Argued: May 9, 2003

Decided and Filed: June 3, 2003

Before: KENNEDY, SILER, and GILMAN, Circuit
Judges.

———————————

## COUNSEL

**ARGUED:** Terry M. Cushing, ASSISTANT UNITED
STATES ATTORNEY, Louisville, Kentucky, for Appellant.
Harley N. Blankenship, Louisville, Kentucky, for Appellee.
**ON BRIEF:** Terry M. Cushing, Candace G. Hill,
ASSISTANT UNITED STATES ATTORNEYS, Louisville,
Kentucky, for Appellant. Harley N. Blankenship, Louisville,

———

Kentucky, Donald M. Heavrin, HEAVRIN & ASSOCIATES,
Louisville, Kentucky, for Appellee.

———————————

## OPINION

———————————

  RONALD LEE GILMAN, Circuit Judge.    After
participating in a number of financial transactions involving
a now-bankrupt corporation, Donald Heavrin was indicted on
14 counts of bankruptcy fraud.  The trial commenced in
October of 2000.  At the end of the trial, but before the case
was submitted to the jury, Heavrin moved for a judgment of
acquittal on all of the charges pursuant to Rule 29 of the
Federal Rules of Criminal Procedure.  The district court
granted Heavrin's motion.

  Heavrin subsequently filed a motion to have the
government pay his attorney fees and costs pursuant to the
Hyde Amendment, 18 U.S.C. § 3006A.  Finding that three of
the substantive counts, along with their respective money-
laundering counts, were frivolous, the district court granted in
part and denied in part Heavrin's motion.  The government
then filed this timely appeal, contending that (1) the district
court applied the wrong legal standards to Heavrin's motion,
(2) the counts in question were not frivolous, and (3) Heavrin
did not prove that he was an eligible "party" entitled to seek
reimbursement under the Hyde Amendment.  For all of the
reasons set forth below, we **AFFIRM** the finding of the
district court that Heavrin qualified as a "party" under the
Hyde Amendment, but **VACATE** the judgment and
**REMAND** the action to determine whether Heavrin is
entitled to attorney fees and costs under the proper legal
standards.

## I.    BACKGROUND

### A.    Factual background

Robert Harrod and Michael Macatee were the principal shareholders of Triple S Restaurants, Inc.   Heavrin was Harrod's stepson and Triple S's outside counsel.   Triple S periodically obtained loans for its business operations from McDonnell Douglas Finance Corporation (MDFC).   In the early 1990s, MDFC required Harrod and Macatee to obtain key-man life insurance policies as collateral for MDFC's loans to Triple S. Harrod and Macatee obtained such policies, which designated Triple S as the beneficiary.   The key-man life insurance policy on Harrod, issued by Jackson National Life Insurance Company, was in the amount of two million dollars.   MDFC was the assignee for the full face value of the policy.

In March of 1994, Harrod was diagnosed with terminal cancer.   Heavrin began negotiating with MDFC to secure a portion of the Harrod insurance proceeds for Harrod's heirs in April or May of that year.   The basis for Heavrin's negotiations was the threat of a lender-liability lawsuit against MDFC.   Shortly thereafter, Heavrin recommended to Harrod and Macatee that they transfer their respective key-man life insurance policies to irrevocable trusts.   Harrod accordingly transferred his policy to the Robert Harrod Trust, of which Harrod was the trustee and sole beneficiary, on June 17, 1994. Harrod died on September 2, 1994.

Triple S began having financial difficulties in the early 1990s.   On September 30, 1994, Triple S filed a petition for bankruptcy under Chapter 11.   The Chapter 11 proceeding was converted to a Chapter 7 bankruptcy three months later. Because nobody told David Chinn, the attorney who handled Triple S's bankruptcy filing, about the transfer of Harrod's key-man life insurance policy, Chinn did not list the transfer in the bankruptcy petition.

In November of 1994, Jackson National Life disbursed $1.75 million, plus interest, from the proceeds of the Harrod

insurance policy to MDFC pursuant to the negotiations between Heavrin and MDFC.   It paid to the Harrod Trust the remaining $250,000, plus interest.   Of the $250,000, Heavrin paid his stepsister $75,000 and kept $175,000 for himself. Harrod's probate records and death tax returns, however, which Heavrin submitted as the executor of Harrod's estate, failed to disclose the $250,000 insurance payment to Herrod's heirs.

Heavrin later entered into an agreement pursuant to which he sold his shares of stock in Total Vend, Inc., a vending company, for $1,105.000.   There was no connection between Triple S and Total Vend, but Heavrin's interest in Total Vend became relevant during his deposition taken in connection with Triple S's bankruptcy proceeding.   In the course of the deposition, which occurred prior to the sale of the Total Vend shares, Heavrin claimed to have no ownership interest in Total Vend.   The government discovered during Heavrin's criminal trial that he did not mention the shares of Total Vend in his deposition because they were in a revocable trust at the time that he was deposed.

### B.    Procedural background

Both the bankruptcy judge handling the Triple S bankruptcy action and the United States Trustee's Office reported Heavrin's conduct to the United States Attorney's Office. After the government presented a case against Heavrin to a federal grand jury, the grand jury returned an indictment in September of 1999, charging Heavrin with fraudulently transferring or concealing Triple S's key-man life insurance policy on Harrod, in violation of 18 U.S.C. § 152(7) (Count 1); fraudulently concealing the $250,000 in proceeds from Harrod's policy that were paid to the Harrod Trust, in violation of 18 U.S.C. § 152(1) (Count 2); and laundering the $250,000 that he had fraudulently diverted from Triple S, in violation of 18 U.S.C. § 1957 (Counts 3-5).

The government discovered Heavrin's sale of his Total Vend shares and his disclaimer of ownership interest during his bankruptcy deposition, which was taken after the grand

jury returned its original indictment. As a result, the grand jury returned a number of superseding indictments, culminating in a third superseding indictment dated October 18, 2000. In the third superseding indictment, the grand jury added counts for criminal contempt of the bankruptcy court's orders, in violation of 18 U.S.C. §§ 401(3), 402 (Count 7), fraudulently concealing from the bankruptcy court the proceeds that Heavrin received from the Total Vend sale, in violation of 18 U.S.C. § 152(1) (Count 8); fraudulently making a material false statement in his bankruptcy deposition, in violation of 18 U.S.C. § 152(2) (Count 9); and additional money-laundering counts, in violation of 18 U.S.C. § 1957 (Count 5) (original Count 5 was renumbered Count 6) and 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 10-14).

An eight-day trial was held in district court, commencing on October 23, 2000. Heavrin testified in his own defense. During Heavrin's testimony, his counsel produced a document showing that Heavrin did not directly own stock in Total Vend at the time of his bankruptcy deposition because it was part of a revocable trust that was transferred back to him sometime after he was deposed. The government thereupon agreed to dismiss Count 9, even though this document had not been provided to the government before trial.

At the end of all the proof, but before the case was submitted to the jury, Heavrin moved for a judgment of acquittal on all charges pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The district court granted Heavrin's motion. *United States v. Heavrin*, 144 F. Supp. 2d 769 (W.D. Ky. 2001).

Heavrin subsequently moved for an award of attorney fees and costs pursuant to the Hyde Amendment, Pub. L. No. 105-119, § 617, 111 Stat. 2519 (1997), *reprinted in* 18 U.S.C. § 3006A, Historical & Statutory Notes. The district court held that Heavrin was entitled to an award, and requested additional briefing regarding the proper amount. *United States v. Heavrin*, 187 F. Supp. 2d 738 (W.D. Ky. 2001).

After considering the parties' supplemental memoranda, in which Heavrin sought $72,421.30, the court awarded him $17,486.60. It is from this partial grant of Heavrin's motion that the government appeals.

## II. ANALYSIS

### A. Standard of review

"[D]istrict court decisions on Hyde Amendment applications are reviewed for an abuse of discretion." *United States v. True*, 250 F.3d 410, 422 (6th Cir. 2001). "An abuse of discretion occurs when the lower court relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Id.* at 422 n.9 (internal quotation marks omitted). A district court likewise abuses its discretion when we are "firmly convinced that a mistake has been made, i.e., when we are left with a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (internal quotation marks omitted).

### B. Award of attorney fees and costs under the Hyde Amendment where only some of the counts are found to be vexatious, frivolous, or in bad faith

The government first contends that the award of attorney fees and costs was unjustified because the district court found that only some of the counts were vexatious, frivolous, or in bad faith, as opposed to a finding that the government's prosecution of the case was generally vexatious, frivolous, or in bad faith. In partially granting Heavrin's motion, the district court held that Counts 2, 7, and 9 were frivolous, but that Count 1 was not frivolous. (Counts 3, 4, 5, 6, and 10 through 14 were money-laundering charges, and were derivative of the substantive counts. If certain substantive counts were frivolous, presumably so were their corresponding derivative counts.)

### 1.   *Interpretation of the Hyde Amendment*

The award of attorney fees and costs pursuant to the Hyde Amendment where some of the counts are found to be frivolous and others are not is apparently a matter of first impression in the federal appellate courts. Because we are presented with a previously unexplored question of statutory interpretation, we should first look to the plain meaning of the statutory language. *United States v. Ron Par Enters., Inc.*, 489 U.S. 235, 241 (1989) ("The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself."). The Hyde Amendment provides in pertinent part as follows:

> During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) . . . may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code.

18 U.S.C. § 3006A. Because the words "position," "vexatious," "frivolous," and "bad faith" are not defined in the statute, they must be accorded their ordinary meaning. *Chapman v. United States*, 500 U.S. 453, 462 (1991) (interpreting a federal statute and the United States Sentencing Guidelines).

This court, in interpreting the meanings of "vexatious" and "bad faith" for purposes of the Hyde Amendment, has adopted the Fourth and Eleventh Circuits' definitions of those words. *True*, 250 F.3d at 423 (affirming the denial of a motion for attorney fees and costs under the Hyde Amendment). It stated:

> The Fourth and Eleventh Circuits have looked to Black's Law Dictionary to define these terms. "Vexatious" is defined as "without reasonable or probable cause or excuse." "Bad faith" is defined as "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral ambiguity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will."

*Id.* at 423 (citations omitted) (alteration in original).

We are left to interpret the terms "position" and "frivolous" as used in the Hyde Amendment. The Eleventh Circuit resorted to Black's Law Dictionary and Rule 11 of the Federal Rules of Civil Procedure to define "frivolous." It said that "frivolous" means "[g]roundless[,] . . . with little prospect of success . . . ." *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (first alteration in original); *see also United States v. Braunstein*, 281 F.3d 982, 995 (9th Cir. 2002) (adopting the *Gilbert* court's definition of "frivolous"); *In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000) (same).

The district court below, after citing *Gilbert* and quoting its definition of "frivolous," provided a more comprehensive definition of the word:

> [A] frivolous charge is either one without some legal precedent for the government's position or, if legally sound, a charge brought without a reasonable expectation of evidence at trial to support this position. The government need not have actual evidence before bringing charges, only a reasonable expectation of attaining it at trial.

We believe that the portion of the district court's definition of "frivolous" encompassing the phrase "without some legal precedent" is too restrictive. The government should be allowed to base a prosecution on a novel argument, so long as it is a reasonable one, without fear that it might be setting itself up for liability under the Hyde Amendment. Just because the government lacks "precedent" does not

automatically mean that its position is frivolous. *Cf. United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1183 (9th Cir. 2003) ("The case is frivolous when the government's position was foreclosed by binding precedent or so obviously wrong as to be frivolous."). We therefore adopt the following definition of the term "frivolous" for the purpose of the Hyde Amendment: A frivolous position is one lacking a reasonable legal basis or where the government lacks a reasonable expectation of attaining sufficient material evidence by the time of trial.

At this juncture, we feel compelled to more precisely explicate the difference between the words "frivolous" and "vexatious" because *Gilbert*'s definition of "frivolous" is similar to this court's definition (albeit in dicta) of "vexatious." *Compare True*, 250 F.3d at 423 (defining "vexatious" as "without reasonable or probable cause or excuse"), *with Gilbert*, 198 F.3d at 1299 (defining "frivolous" as "[g]roundless[,] . . . with little prospect of success"). Although there is undoubtedly an overlap in the meaning of the two words, the term "vexatious" embraces the distinct concept of being brought for the purpose of irritating, annoying, or tormenting the opposing party. *See* Webster's Third New International Dictionary Unabridged 2548 (1986); *see also United States v. Knott*, 256 F.3d 20, 29-30 (1st Cir. 2001) ("Without a finding of bad faith or improper motive, . . . if the government pursues a prosecution without any foundation or basis for belief that it might prevail, such a prosecution would more appropriately be deemed 'frivolous' than 'vexatious.' Reading 'vexatious' to encompass such a case would render it synonymous with 'frivolous' . . . ."), *cert. denied*, 534 U.S. 1127 (2002); *United States v. Sherburne*, 249 F.3d 1121, 1126 (9th Cir. 2001) (noting that "vexatious" "includes an element of maliciousness, or an intent to harass").

The government and Heavrin further disagree over the definition of the word "position." *See* 18 U.S.C. § 3006A (authorizing an award of attorney fees and costs "where the court finds that the *position* of the United States was

vexatious, frivolous, or in bad faith") (emphasis added). Heavrin argues that the district court's count-by-count approach in evaluating Hyde Amendment claims is consistent with the language of the statute. On the other hand, the government contends that the district court gave little consideration to the word "position" when it awarded attorney fees and costs after conducting a count-by-count analysis.

The Hyde Amendment expressly states that it is subject to the procedures and limitations of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. 18 U.S.C. § 3006A ("Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code."); *see, e.g.*, *United States v. Ranger Elec. Communications, Inc.*, 210 F.3d 627, 632-34 (6th Cir. 2000) (applying the EAJA statute-of-limitations provision to a Hyde Amendment motion). The EAJA provides, in pertinent part, that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any . . . action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified . . . ." 28 U.S.C. § 2412(d)(1)(A).

In interpreting the term "position" in the context of the EAJA, the Supreme Court declared: "The fact that the [word] 'position' is again denominated in the singular . . . buttresses the conclusion that only one threshold determination for the entire civil action is to be made." *Comm'r, INS v. Jean*, 496 U.S. 154, 159 (1990). It concluded that "the EAJA . . . favors treating a case as an inclusive whole, rather than as atomized line-items." *Id.* at 161-62; *see also Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993) (stating in an EAJA case that "when determining whether the government's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of the circumstances, whether the government acted reasonably . . . .").

Because the Hyde Amendment is subject to the procedures and limitations of the EAJA, the term "position" should be accorded the same meaning under the Hyde Amendment as it is in the EAJA. When assessing whether the "position of the United States was vexatious, frivolous, or in bad faith," the district court should therefore make only one finding, which should be based on the "case as an inclusive whole." *Jean*, 496 U.S. at 162. A count-by-count analysis is inconsistent with this approach.

Evaluating a case as an inclusive whole is not susceptible to a precise litmus test. The fact that only one count among many is frivolous or not frivolous is not determinative as to whether a movant should receive an award under the Hyde Amendment. Even if the district court determines that part of the government's case has merit, the movant might still be entitled to a Hyde Amendment award if the court finds that the government's "position" as a whole was vexatious, frivolous, or in bad faith. By the same token, a determination that part of the government's case is frivolous does not automatically entitle the movant to a Hyde Amendment award if the court finds that the government's "position" as a whole was not vexatious, frivolous, or in bad faith. The district court, in other words, must not fail to see the forest for the trees.

### 2. *Application of the Hyde Amendment to the criminal prosecution of Heavrin*

The government maintains that the district court erred by awarding attorney fees and costs under the Hyde Amendment when it deemed only 3 of the 14 counts to be frivolous. There are two problems with the government's argument. First, the district court explicitly recognized that "[s]ince the money laundering charges are derivative of [the substantive charges], the Court need not consider them separately." *Heavrin*, 187 F. Supp. 2d at 741. In effect, it found not only that Counts 2, 7, and 9 were frivolous, but implied that the money-laundering charges associated with Counts 2, 7, and 9 were also frivolous. The second problem, as discussed above, is

that the Hyde Amendment is not concerned with the percentage of counts that are found to be vexatious, frivolous, or in bad faith. Rather, the analysis turns on whether the prosecution's "position" as a whole is deemed to meet one or more of those criteria.

Whether the prosecution's position as a whole is deemed frivolous requires the court to inquire into the merits of the entire case. The district court below, however, did not conduct such an analysis. Instead, it determined that three of the substantive counts were frivolous, and awarded attorney fees and costs accordingly. What the district court should have done was assess the case as an inclusive whole. It therefore abused its discretion by applying an erroneous legal standard in awarding attorney fees and costs to Heavrin.

Because the district court did not apply the correct legal standard to this complex factual situation, we remand the action so that the district court can assess whether the prosecution's position was, as a whole, frivolous. *Cf. United States v. Skeddle*, No. 00-3195, 2002 WL 2026537, at *3 (6th Cir. Aug. 29, 2002) (per curiam) ("The district court, having conducted the entire trial and witnessed the government's case, is in a far superior position to evaluate whether the government's position was vexatious, frivolous, or in bad faith. The court has a fresh recollection of the government's conduct that this court's review of the cold record simply cannot provide."). In addition, the district court should reconsider the government's position in light of the proper definition of the term "frivolous" as set forth above. Only if the district court concludes that the government's position as a whole was frivolous (as properly defined) would an award of attorney fees and costs be appropriate under the Hyde Amendment.

### C. Heavrin's net worth

As an alternative ground for reversal, the government contends that Heavrin should not have qualified for an award of attorney fees and costs because he was not a "party" under the Hyde Amendment. The Amendment authorizes an award

of attorney fees and costs only to a prevailing "party." 18 U.S.C. § 3006A.

No definition is found in the Amendment as to the meaning of the term. Instead, the Amendment adopts the definition set forth in the EAJA. Under the EAJA, an individual "party," as opposed to a corporate "party," is "an individual whose net worth did not exceed $2,000,000 at the time the . . . action was filed." 28 U.S.C. § 2412(d)(1)(C)(2)(B)(i) (defining the term "party" in the EAJA); *see also United States v. Adkinson*, 247 F.3d 1289, 1291 n.2 (11th Cir. 2001) (applying the EAJA definition of "party" to a motion pursuant to the Hyde Amendment); *Heavrin*, 187 F. Supp. 2d at 742 (same).

The district court did not explain its analysis with respect to Heavrin's net worth. Rather, it summarily stated that "[Heavrin] has given the Court sufficient reason to conclude that his net worth is much less than $2 million." This conclusion was presumably based upon an affidavit that Heavrin submitted to the court, stating that his net worth did not exceed two million dollars at the time the criminal action was filed. In addition, his affidavit sets forth the following calculations:

> If I could gradually liquidate my assets, some of which are owned in joint survivorship with my wife, after all bills are paid, I estimate that I would end up with approximately $900,000 less capital gains tax and less any money that is recovered by the trustee in bankruptcy in the two adversary proceedings that are pending. The dollar amount in those two proceedings is over $400,000.00 plus accumulated interest.

> If I quickly sells [sic] my assets, I estimate that I would have about $200,000.00 left after all bills were paid less taxes and less any amounts the trustee is able to recover pursuant to the two adversary proceedings that are pending.

The heart of the government's contention regarding Heavrin's net worth is that he failed to provide any

"indication about how he arrived at his estimate." It argues that, "[a]t a minimum, a defendant should file the statement of an accountant consistent with generally accepted accounting principles before he is entitled to attorney's fees."

Because the case law contains no in-depth analysis of the term "party" under the Hyde Amendment, we are directed to the relevant EAJA jurisprudence for guidance in resolving the conflicting arguments. Individual movants seeking attorney fees and costs pursuant to the EAJA have the burden of establishing that their net worth is less than two million dollars. *Estate of Woll v. United States*, 44 F.3d 464, 470 (7th Cir. 1994) ("As the party seeking to recover its litigation costs, the estate bore the burden of establishing that it met the net worth limitations of the EAJA."); *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991) (same). Net worth is determined in accordance with "generally accepted accounting principles." *Shooting Star Ranch, LLC v. United States*, 230 F.3d 1176, 1178 (10th Cir. 2000). It is to be calculated "by subtracting total liabilities from total assets." *Id.* (quoting H.R. Rep. No. 96-1418, at 15 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4994).

A movant's bare assertion that his or her net worth falls short of two million dollars will generally be insufficient to satisfy this burden. *Id.* Rather, the movant should at least proffer an affidavit showing that the statutory criteria has been met. *Id.* (holding that a movant's unsworn and unverified letter, by itself, does not satisfy the movant's net-worth burden). *But see D'Amico v. Indus. Union of Marine & Shipbuilding Workers of Am.*, 630 F. Supp. 919, 923 (D. Md. 1986) (noting that movants need not prove in an affidavit that they are "parties" under the EAJA "until some objection to their eligibility is raised by the government").

We have been unable to find any authority holding that either a Hyde Amendment movant or an EAJA movant, faced with a challenge to his or her net worth, must provide an affidavit any more specific than that filed by Heavrin. In particular, we find no support for the government's argument

that a movant must file "the statement of an accountant consistent with generally accepted accounting principles before he is entitled to attorney's fees."

Heavrin's affidavit not only states that his net worth "did not exceed two million dollars at the time the criminal action was filed," but also provides the summary calculations on which he based his conclusion. This, in our opinion, is sufficient to constitute prima facie proof of Heavrin's status as a "party." We reach this conclusion because we believe that it would be unnecessarily burdensome to require every Hyde Amendment movant to submit an accountant's financial statement where only a tiny fraction of the population has a net worth anywhere near $2 million. In the relatively few cases where the government seriously questions the movant's status as a "party," it is free to pursue discovery on this issue. *See* 18 U.S.C. § 3006A ("To determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence . . . ."). Its failure to do so in this case can be considered an implied concession of Heavrin's status as a "party." We therefore conclude that Heavrin presented sufficient evidence to qualify as a "party" under the Hyde Amendment.

## III.   CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the finding of the district court that Heavrin qualified as a "party" under the Hyde Amendment, but **VACATE** the judgment and **REMAND** the action to determine whether Heavrin is entitled to attorney fees and costs under the proper legal standards.