**UNITED STATES of America, Plaintiff**

v.

**Donald M. HEAVRIN, Defendant.**

**Criminal Action No. 3:99CR–113–H.**

United States District Court,
W.D. Kentucky,
At Louisville.

Feb. 25, 2004.

Donald M. Heavrin, Heavrin & Associates, pro se, Harley N. Blankenship, Rob Eggert, Scott C. Cox, Louisville, KY, for Defendant.

Marisa J. Ford, U.S. Attorney Office, Terry M. Cushing, Louisville, KY, for Plaintiff.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

For the third time the Court considers substantial aspects of this case. The original Memorandum of Acquittal in *U.S. v. Heavrin*, 144 F.Supp.2d 769 (W.D.Ky. 2001), discussed the evidence in the criminal trial. Later, the Court awarded attorney's fees under the Hyde Amendment. *U.S. v. Heavrin*, 187 F.Supp.2d 738 (W.D.Ky.2001). Now on remand from the Sixth Circuit, this Court must determine whether Heavrin is entitled to those attorney's fees under the circuit's newly articulated standard. *See United States v. Heavrin*, 330 F.3d 723 (6th Cir.2003).

### I.

The Sixth Circuit's new standard has some conceptual difficulties. First, the panel said that this Court's definition of "frivolous" is "without some legal precedent," was too restrictive. The panel stated that a legal position (and therefore, a charge based upon it) is frivolous if the government lacks a reasonable legal basis for asserting that position. It explained that the government may base a prosecution on a novel argument, so long as it is a reasonable one. If that is so, it can avoid liability under the Hyde Amendment. *Heavrin*, 330 F.3d at 729. The Court is not certain how this is different than its own iteration, that there must be some support, even for a novel theory.

Next, the panel said that one must construe the term "position" broadly. It said that whether the prosecutor's position as a whole is deemed frivolous requires the Court to inquire into the merits of the entire case. Therefore, the district court should make only one finding "on the cases as inclusive." *Heavrin*, 330 F.3d at 731. Construing the case as a whole without appearing to consider each count separately is the most difficult task conceptually. One cannot avoid some consideration of the separate counts. Nevertheless, in Section III of this Memorandum Opinion the Court has considered the case as a whole.

### II.

Stating the new standard is not so difficult; applying it is another matter. Even though the Court ultimately considers the prosecution as a whole; to do so, one must at least discuss the individual charges.

### A.

The Court found that the government had no factual or legal basis for the charges that Heavrin violated a court order. Although it may seem somewhat of a technical distinction when the Court order says that he may not sell any of his assets. In fact, he did not. The assets of Total Vend were sold. Even so, the company received several hundred thousand dollars in cash plus additional payouts over a period years. The government entered no proof demonstrating the remote possibility of the charges under this count. The allegations that Heavrin lied under oath barely merit any discussion, they are so frivolous and without merit. *See U.S. v. Heavrin*, 187 F.Supp.2d at 746–48. Though these charges amount to little more than prosecutorial mud-slinging, one must acknowledge that they constitute only a small part of the case as a whole. The Court will consider this as a factor in its analysis of the whole in Section III.

### B.

The government has no direct evidence that Heavrin concealed either the transfer of the Policy or his receipt of $252,000. The government did not even call Mr. Chinn as a witness. Nothing in the testimony of Macatee or MDFC officials suggest an influence, attempted or otherwise,

by Heavrin. The Court stands by the record and its previous analysis. *See Heavrin,* 187 F.Supp.2d at 743–747.

It is also important to emphasize the process for determining whether the government could be held accountable for the absence of evidence. The Court conducted an in camera hearing with the government lawyers. The transcript of that hearing reveals that the government had plenty of suspicions, but absolutely no evidence that Heavrin influenced MDFC, Chinn or Macatee to omit the insurance transaction from their disclosures. The Court focused on the fact that without the aid of those persons, Heavrin could not possibly have concealed the transaction.

## 1.

■ Absent any factual evidence of fraud, the reasonableness of the criminal charges would depend upon whether Heavrin has an independent legal obligation to report either the transfer of the Policy to the Harrod Trust or the Harrod Trust receipt of $250,000 from Jackson National. It is most likely that TSR, its officers, its bankruptcy attorney and perhaps even MDFC did have such a legal obligation. If the U.S. Attorney had brought criminal charges against any of those entities, the government would only need to have proven intent to defraud in order to obtain a conviction in a criminal case.

Initially, the government rested its case on the legal notion that Heavrin had an independent legal duty to report the receipt of funds to the Trustee or the Bankruptcy Court. It quickly became apparent that the Code itself contains no such requirement. The government could produce no reported case from any jurisdiction which established the duty of a third party such as Heavrin. Without any direct supporting authority to support Heavrin's legal responsibility to report, one could certainly conclude that the government lacked a "reasonable legal basis" for that claim. Nevertheless, the Sixth Circuit cautioned that the government should be allowed to "base a prosecution on a novel argument, so long as it is a reasonable one, without fear" of liability under the Hyde Amendment. At least, the government's theory is a novel one. To support its contention that the argument was both novel and reasonable, the government cites *United States v. Ross,* 77 F.3d 1525 (7th Cir.1996). The Court invites anyone to discern how *Ross* might support the argument that Heavrin owed an independent legal duty to report the receipt of funds from the Harrod Trust.

Thomas Ross was the president and sole owner of the Illinois School of Commerce ("ISC"). Ross was indicted and ultimately convicted on charges of misappropriation of federal funds, mail and wire fraud, lying to federal agents and bankruptcy fraud under 18 U.S.C. § 152. The government showed that after ISC filed for bankruptcy, Ross transferred assets of the company to a friend and then filed false reports to conceal the scheme. The jury found him guilty under 18 U.S.C. § 152, exactly the statute charged against Heavrin. On appeal, Ross argued that he could not be charged under any circumstances under Section 152 because he was not the bankrupt. In other words, he argued that only the corporate bankrupt and its attorney could be liable as a matter of law.

The Seventh Circuit affirmed the conviction saying merely that "Ross's argument that his status as a non-bankrupt renders him unsusceptible to conviction under the statute, which does not confine its reach only to bankrupts has no merit." The same is true of Heavrin. Section 152 does not exclude liability of a third party such as Heavrin if there is proof that he caused the concealment or non-reporting of assets or if a third party stole assets of the

bankrupt. On the other hand, *Ross* says absolutely nothing about a third party having a legal obligation to report a transaction. One cannot read any such inference into the Court's brief comments about bankruptcy fraud. *Id.* at 1548.

In *Ross,* the government presented actual evidence that Ross stole assets and concealed the transaction. Moreover, though the Seventh Circuit did not address the issue, the corporation's failure to report the transaction arguably can be attributed to Ross because he was the sole shareholder and president. This Court believes several years ago and believes now that one cannot fairly or reasonably rely upon *Ross* as authority to impose an independent legal duty of reporting upon a third party such as Heavrin. To the extent it did so, the government's theory was an unreasonable one.

## III.

■ The Court's analysis of the individual claims, however, is too narrow to be completely fair to the government. Looking at the case from a broader perspective, it is much easier to understand why the government might have brought this indictment. The Court now looks at the central allegations of the complaint as a whole.

The Court finds a number of most suspicious circumstances as well as serious breaches of fiduciary and ethical duties which prosecutors could have believed ultimately must lead to fraud. The biggest "elephant in the barn" is that Heavrin ended up with $252,000 for him and his sister. He accomplished this by negotiating a unusual settlement for himself at the same time he continued as counsel for TSR. No one has satisfactorily explained why MDFC would make such a large settlement. Heavrin's conflicting explanations certainly could lead to the inference

that he was lying about everything. The government certainly hoped that Heavrin's conflicting explanations, breaches of fiduciary duties and other "fast and loose" actions would leave him with no credibility before a jury.

The inference that Heavrin and Chinn somehow conspired to conceal the insurance policy transfer is an appealing one. When one looks at the broader case as a whole, it is easy to see why the inference would appear so likely. Heavrin was both a family member and an insider with the potential ability to have others act on his behalf. As a consequence of these conflicts, Heavrin appears to have breached many fiduciary and ethical obligations. Chinn and Heavrin shared space. Macatee seemed not very knowledgeable about some affairs. Chinn failed to testify and must have been hiding something. Moreover, though a series of unusual events, the transactions were concealed from the Trustee. The natural inference from these and other circumstances is that Heavrin was directing events and for his own benefit. While none of these many dots can be connected to prove the case, there are certainly "a lot of dots" in the evidence.

Looking at the case as a whole as the Sixth Circuit has required, the Court sees that a different picture does emerge. In its previous decisions, the Court concludes that the government ultimately could not connect the proof in a manner sufficient to prove a crime. One cannot ignore, however, the serious conflicts of interest, unexplained occurrences and suspicious circumstances which inhabit some many aspects of these events. These events make it likely that the government believed crimes were committed. Viewed from this new perspective, the Court concludes that the government had strong reasons to believe the case against Heavrin on a substantial

part of the indictment. Therefore, its case against Heavrin was not at all frivolous.

The Court will enter an order consistent with this Memorandum Opinion.

## ORDER

On remand from the Sixth Circuit, the Court has considered whether Heavrin is entitled to attorney's fees under the Hyde Amendment. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for attorney's fees under the Hyde Amendment is DENIED.

This is a final order.