**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald W. SKEDDLE, Defendant–
Appellant.**

**No. 00–3195.**

United States Court of Appeals,
Sixth Circuit.

Aug. 29, 2002.

---

Before BOGGS and MOORE, Circuit Judges; and RUSSELL, District Judge.*

PER CURIAM.

Ronald W. Skeddle appeals the district court's order denying him attorneys' fees under the Hyde Amendment, 18 U.S.C. § 3006A, statutory note. Skeddle's claims that he is entitled to attorneys' fees incurred in defending against a prosecution for various counts of tax fraud and filing false tax returns. According to Skeddle, the United States's legal positions in that prosecution were "vexatious, frivolous, or in bad faith," given the readily ascertain-

able facts. For all of the following reasons, we affirm the district court's denial of his motion under the Hyde Amendment.

## I

Skeddle's claim for attorneys' fees is the product of a lengthy and complicated federal criminal prosecution. In 1995, the government obtained a 313–count indictment against Skeddle, Darryl J. Costin, *see United States v. Costin,* Nos. 00–3195, 00–3287, 00–3288, and six other co-defendants. After pre-trial motions, Costin, Skeddle, and their co-defendants were tried on over 200 counts, which included mail and wire fraud, conspiracy, and money laundering. These charges were all directed at a transaction between Libbey–Owens–Ford Company ("LOF"), of which Skeddle and Costin were executives, and Computer Technoloy Management ("CTM"), a computer services company that Skeddle and Costin established. LOF contracted with CTM for computer consulting work.

CTM was itself a complicated entity. It was wholly owned by three corporations, operated by Professor Clarence Martin, a computer scientist and friend of Costin and Skeddle. These three corporations were known as the Martin Companies. Each of three companies, CJD (owned and operated by Costin), SWR (operated by Skeddle), and BBE (owned and operated by Edward Bryant, another LOF executive), wholly owned one of the three Martin Companies respectively. SWR was formally owned by Skeddle's young children.

The indictment alleged that this elaborate configuration of corporations was designed to conceal self-dealing of LOF busi-

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

ness to the three LOF executives and to embezzle money from LOF through payments to CTM for phantom computer-consulting services. After an extensive jury trial, the jury acquitted all of the defendants of all counts.

Coming up empty on the first prosecution, government prosecutors referred Costin, Skeddle, and Robert Hobe, their accountant, to the Tax Division of the Department of Justice. The government then obtained an eighteen-count indictment against Costin, Skeddle, and Hobe, including various charges of tax fraud. At various points in the proceedings, the district court entered judgments of acquittal for the defendants on sixteen of the eighteen counts. By the end of the trial, the district court had entered judgments of acquittal on all of the counts against Skeddle. Only four counts—two against Hobe and two against Costin—remained when the case was finally submitted to the jury.

After the court had dismissed all charged against Skeddle by judgment of acquittal, Skeddle filed a motion for attorneys' fees under the Hyde Amendment. Skeddle claimed that each of the charges brought by the government had obvious flaws that could have been revealed through the slightest investigation by the government. Skeddle's attorney claimed that the fees, costs, and expenses incurred in defending against the tax fraud prosecution amounted to $654,000. Although none of the counts on which Skeddle was indicted reached the jury, the district court denied Skeddle's motion for attorneys' fees. According to the court, the government's prosecution of Skeddle was neither vexatious, frivolous, nor taken in bad faith. While noting that the government's legal position in the prosecution was "legally incorrect," the district court held that it was not "unreasonable."

Skeddle now appeals the district court's denial of attorneys' fees.

## II

Enacted in 1997, the Hyde Amendment permits courts to award criminal defendants damages when the government takes a position in a prosecution that "was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances would make such an award unjust." 18 U.S.C. § 3006A, statutory note. Given the recency of the Amendment's passage, we have not had occasion extensively to discuss the standard governing the decision to award fees—although the Amendment does provide us some additional guidance. Awards shall be made, according to the Amendment, pursuant to the "procedures and limitations (but not the burden of proof) provided for an award" under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412.

The mere fact that the government prosecution was unsuccessful does not establish that the prosecution was "vexatious, frivolous, or in bad faith." *United States v. Gilbert*, 198 F.3d 1293, 1302–03 (11th Cir.1999). Indeed, a criminal defendant seeking recovery under the Hyde Amendment faces "a daunting burden." *Ibid.* To demonstrate that a prosecution was taken in bad faith, the defendant must show more than simple negligence, but some evidence of conscious wrongdoing on the part of the government. *See United States v. True*, 250 F.3d 410, 422–23 (6th Cir.2001). For a position of the government to be vexatious, it must be "without reasonable cause or excuse." *Ibid.*

The substantive standard, requiring that the United States's position be "vexatious, frivolous, or in bad faith" before attorneys' fees are awarded, is not further defined in the statute. The elements of the standard are disjunctive: the position of the United

States need only be either "vexatious" or "frivolous," or "in bad faith" to permit recovery. Several courts have struggled with clarifying the standard that the Hyde Amendment establishes. For example, one circuit court of appeals has explained at length that the "vexatious" prong of the Amendment requires that the government's position be *both* without factual or legal foundation *and* provide objective evidence of maliciousness on the part of government prosecutors. *See Knott,* 256 F.3d at 30–31. We note that even if the vexatious prong of the Amendment requires maliciousness, a prevailing party may still recover because the government position was "frivolous," which appears only to require that the government's position completely lack evidential or legal merit. *See ibid.* (recognizing that the "frivolous" element does not require a finding of maliciousness). The Hyde Amendment is not aimed at the general run of prosecutions, or even those that the government loses, but instead at instances of "prosecutorial misconduct," where the government had undertaken obviously groundless positions in a prosecution or positions intended solely to harass defendants rather than to vindicate the rule of law. *Gilbert,* 198 F.3d at 1303; *Knott,* 256 F.3d at 28. In contrast, the Hyde Amendment does not shift to the government the risk of not prevailing always associated with litigating matters of law and fact on which reasonable people can disagree before courts and juries.

Insofar as the Hyde Amendment requires that the government's position be "vexatious, frivolous, or in bad faith" before the recovery of fees is permitted, it establishes a substantially more rigorous standard than the Equal Access to Justice Act, which merely requires that the government's position be "not substantially justified." 28 U.S.C. § 2412(d)(1)(A); *United States v. Knott,* 256 F.3d 20, 28 (1st Cir.2001) (explaining that Congress expressly rejected the EAJA's substantive standard for recovery because it was too easy to meet). Also unlike the EAJA, the Hyde Amendment places the burden to prove the standard for a fee award on the criminal defendant. *Knott,* 256 F.3d at 29. *Compare* Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (requiring that courts award attorneys' fees to a private party prevailing against the United States *"unless* the court finds that the position of the United States was substantially justified or that special circumstances make the award unjust").

Most importantly, we will only overturn a district court's denial of a request for fees under the Hyde Amendment for an abuse of discretion. *True,* 250 F.3d at 421. The district court, having conducted the entire trial and witnessed the government's case, is in a far superior position to evaluate whether the government's position was vexatious, frivolous, or in bad faith. The court has a fresh recollection of the government's conduct that this court's review of the cold record simply cannot provide. Nevertheless, the deferential abuse of discretion standard of review is not completely toothless: we will overturn a district court determination as an abuse of discretion when we are "firmly convinced that a mistake has been made," or put differently, "when were are left with a definite and firm conviction that the trial court committed a clear error in judgment." *Id.* at 422 n. 9.

We are not convinced that the district court abused its discretion in this case. Skeddle argues that the government's prosecution of him was "vexatious, frivolous, or in bad faith" in three respects. First, Skeddle contends that the government's position that he had filed a false tax return of SWR, by claiming that his children were the sole owners of the corpora-

tion, had no basis in law or fact. The district court found that it was literally true that Skeddle's children were the only owners of SWR and that the government "could have discovered earlier that it could not prevail on this claim." If we were to characterize the government's position as simply that Skeddle misrepresented the legal owners of SWR, we might hold that its true owners were so easy to discover that the government must have been consciously avoiding knowledge at best. But the government's theory was far more complicated, that Skeddle made his children record owners in order to conceal income that was actually his. While this theory of filing a false income tax return may not have survived a motion for acquittal, it certainly was not so clearly defective so as to lead us to suspect that the government was up to something nefarious.

Second, Skeddle contends that the government's "shell theory" was taken in bad faith. Similar to the allegations in Costin's prosecution, the government contended that SWR never engaged in any computer consulting and, therefore, was not a business and was not entitled to any business deductions. According to Skeddle, the government should have known that it could not prevail on this argument, given some evidence in the record that Skeddle used his contacts in the business community to create business for CTM. The district court found that because Skeddle's activities for CTM were so "modest," the government's theory was not frivolous, even if ultimately unsuccessful. We agree with the district court that Skeddle's consulting activities were sufficiently subtle that, given the significant income that SWR had from alleged consulting and the complexity created by the *Martin* pass-through corporations, the government's position was not so patently without merit that we must agree that the government had to be aware of its defects.

Third and finally, Skeddle argues that the government's contention that he never paid his children the salaries claimed as expenses by SWR was frivolous and taken in bad faith. According to Skeddle, it should have been clear to the government, from the fact Skeddle withheld taxes for the children, that the salaries were paid. To us, however, the government's position does not seem all that absurd. While Skeddle withheld the taxes, the government's theory was that he retained the salaries for his own use—a reasonable, if ultimately unsuccessful, claim given that he controlled all his children's assets.

Throughout his argument, Skeddle claims that the government's case bears many similarities to *United States v. Holland*, 34 F.Supp.2d 346 (E.D.Va.1999), in which the district court awarded the criminal defendant attorneys' fees under the Hyde Amendment. But Skeddle must see the difference between the district court's position in *Holland* and this court reviewing a district court's denial of a Hyde Amendment fees. While granting fees in *Holland* may have been within the district court's discretion, the denial of fees quite likely would also have been within its discretion. Because we review the district court's denial of fees for an abuse of discretion, even a finding that this case and *Holland* were "on all fours" would not determine our result.

### III

Because the district court did not abuse its discretion, we AFFIRM the district court's order denying Skeddle fees under the Hyde Amendment.