*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0026p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-4343

SHARMILA B. ISAIAH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 03-00140—James L. Graham, District Judge.

Argued: December 9, 2005

Decided and Filed: January 20, 2006

Before: MOORE, ROGERS, and McKEAGUE, Circuit Judges.

—————————————

**COUNSEL**

**ARGUED:** Jacob A. Cairns, KRAVITZ,GATTERDAM & BROWN, LLC, Columbus, Ohio, for Appellant. Dale E. Williams, Jr., ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee. **ON BRIEF:** Max Kravitz, KRAVITZ,GATTERDAM & BROWN, LLC, Columbus, Ohio, for Appellant. Dale E. Williams, Jr., ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

—————————————

**OPINION**

—————————————

ROGERS, Circuit Judge. Defendant Sharmila Isaiah, who was judicially acquitted of two criminal charges, appeals the district court's denial of her request for expenses and attorneys' fees arising from her criminal defense. The United States charged Isaiah with participation in a money-laundering conspiracy and with bank fraud. After the government rested its case, the district court, pursuant to Fed. R. Crim. P. 29, acquitted Isaiah because it determined that the government had failed to present sufficient evidence of Isaiah's specific intent to enter into a conspiracy and to defraud a financial institution. Isaiah then moved to recover costs and attorneys' fees under the Hyde Amendment, Pub. L. No. 105-119, § 617, 111 Stat. 2519 (1997) (reprinted in 18 U.S.C. § 3006a, Statutory Notes). The district court, however, denied her request because, as "the question of Isaiah's intent was a close one," the government had not engaged in a vexatious, frivolous, or bad faith prosecution. We affirm.

1

## I.

In the summer of 2002, Packaging Materials, an Ohio company that manufactures plastic bags sold throughout the United States, discovered a counterfeit check among the items drawn on its accounts-payable checking account with Firstar Bank in Cambridge, Ohio. The check was to the order of "Sharmie Isaiah" in the amount of $38,894.74.

Isaiah is a resident of Indiana with a bank account at Indiana Members Credit Union. She was romantically involved with Ikenna Myers, and Myers introduced her to his high school friend Mitch Yanni when the two men traveled from Columbus to Indianapolis to visit Isaiah. Myers testified that Yanni asked him whether Isaiah had a bank account, but Myers stated that he did not know and that Yanni would have to ask Isaiah. Myers testified that he later heard Isaiah agree to Yanni's request for Isaiah to deposit a check made to her order. After Isaiah agreed to negotiate the check, Myers and Yanni returned to Columbus. While the pair traveled, Yanni called Isaiah and asked for her name, bank-account number, and the name of her bank.

Approximately two weeks later, Myers, Yanni, and two of Yanni's friends returned to Indianapolis. Myers testified that, to the best of his knowledge, Yanni and Isaiah had made arrangements for the deposit of the check that Yanni had brought with them. After the group assembled and arrived at Isaiah's bank, Yanni handed Isaiah the check to her order for $38,894.74, and she went inside the bank to deposit it. She handed the deposit receipt to Yanni.

Yanni and Myers asked Isaiah to write some checks to their order, and she mailed the checks to them. Check number 1021 was to the order of Myers in the amount of $5000, and check number 1022 was to the order of Yanni in the amount of $4000. Yanni and Myers were not able to negotiate the checks in Columbus, so they drove to Indianapolis to cash the checks at Isaiah's bank. The bank contacted Isaiah when the checks were presented, and Isaiah verified that the checks were good.

A week or two later, Yanni and Myers returned to Indianapolis with Justin Alles to meet Demetrius Bynum, one of Yanni's schoolmates. As the three men traveled to Indianapolis, Yanni telephoned Isaiah and had her write checks from her account to the order of Alles and Bynum, neither of whom Isaiah knew. The three men went to Isaiah's apartment, where she gave the men the checks, and they left. The three men then picked up Bynum. Check 1028 was to the order of Alles for $5000, and Check 1029 was payable to Bynum for $5000. These checks were cashed at Isaiah's bank after the tellers obtained confirmation from Isaiah that the checks were good.

Soon after, an investigator from Firstar Bank contacted Isaiah and told her that the check drawn on Packaging Materials' account was counterfeit. The investigator testified that Isaiah sent him a written statement, a copy of the checks to the order of Myers and Yanni, and her bank statement for the relevant period. In her statement to the investigator, Isaiah identified Yanni as "Yani Michel" and failed to mention the checks made to the order of Alles and Bynum. She wrote that Myers (not Yanni, as Myers later testified at trial) asked her to negotiate the check from a settlement because Myers did not have a checking account. Myers' request for checks "did not make sense since he said he couldn't get the check in the first place but he said that he would cash it at my bank." She continued, "This made me think something was wrong with the whole situation but all I could do at that point was get the money out and give it to Ikenna [Myers]." Her bank statement revealed that Isaiah had used some of the money from the counterfeit check.

In August 2003, a federal magistrate judge issued several criminal complaints and arrest warrants, including a complaint and warrant for Isaiah. The complaint charged her with knowingly aiding and abetting a scheme to defraud a financial institution. Several persons pled guilty to various offenses and testified at Isaiah's trial. In December 2002, a federal grand jury returned an indictment, charging Issa Conteh, Yanni, Keith Edward Walker, Deepika Benjamin, Isaiah, Joshua

Ingram, and Heather Watkins with various offenses. Isaiah was charged with participating in a money-laundering conspiracy, in violation of 18 U.S.C. § 1956(h), and aiding and abetting bank fraud, in violation of 18 U.S.C. § 1344(1) and (2). Two of these criminal defendants entered guilty pleas before the trial began. The remaining criminal defendants elected to go to trial.

At the joint trial, the evidence revealed that Conteh managed a nationwide counterfeiting operation. According to Mahamdou Tunkara, an individual involved in the counterfeiting who pled guilty, Conteh recruited and relocated individuals so that they could open bank accounts under assumed names around the United States. The individuals would then deposit counterfeit checks into the bank accounts. The individual would next receive instructions for withdrawing the money in multiple transactions. Once the individual had withdrawn all of the counterfeit check proceeds from the account, the organization relocated the individual so that the counterfeit scam could begin in a new location.

The evidence reflected that Conteh and Yanni knew each other and that Yanni oversaw counterfeiting operations in the Columbus area. Instead of recruiting individuals to relocate to various parts of the United States, Yanni or his confederates in the counterfeiting operation convinced other individuals, mostly young women, to negotiate checks in their personal bank accounts. Several trial witnesses, who had pled guilty to crimes related to the same counterfeiting scheme, testified that they did not know that the checks were counterfeit at the time that they negotiated them.

Two aspects of the testimony of one of these witnesses, Haniya Sabir, figure in this appeal. Sabir testified that she had given Yanni her bank account number and that Yanni had at least once obtained her account balance. Sabir testified, however, that she did not know how Yanni did so without her account password, which she had not given to him. Isaiah now contends that the government's failure to investigate this discrepancy demonstrates that the government prosecuted Isaiah in bad faith.

Also, on recross of Sabir, Isaiah's defense counsel asked Sabir whether she had known that the check that she deposited was counterfeit, and Sabir answered no. Presumably, the purpose of the question was to demonstrate that the government knowingly accepted Sabir's guilty plea despite evidence that she had been tricked into participating in the counterfeiting scheme. The government followed up by presenting Sabir with the Information that charged her with uttering a counterfeit instrument and asking her whether that Information included any language referring to "intent to defraud." Sabir answered that it did not. After Isaiah's defense counsel objected that the government's inquiry was irrelevant and misleading, the government explained that its purpose was to demonstrate that 18 U.S.C. § 513, the statute that Sabir pled guilty to violating, does not require intent to defraud. Instead, section 513 requires only intent to deceive, a mental state that is easier to prove than intent to defraud. The district court noted that intent was at issue and overruled defense counsel's objection. However, the district court, over the government's objection, then permitted Isaiah's defense counsel to ask Sabir clarifying questions as to whether she understood the terms contained in her plea agreement and Information.

At the conclusion of the government's case, Isaiah moved for judgment of acquittal pursuant to Fed. R. Civ. P. 29 because, she argued, the government had not produced sufficient evidence for the jury to find that she had specific intent to defraud or to join a money-laundering conspiracy. The government countered that reckless indifference was sufficient to satisfy the scienter requirement and that the government had offered sufficient circumstantial evidence of Isaiah's reckless indifference to satisfy its burden. Isaiah replied that *United States v. DeSantis*, 134 F.3d 760 (6th Cir. 1998), stands for the proposition that recklessness is relevant only to whether the defendant knowingly executed a scheme (the first element of bank fraud), not whether the defendant also had the specific intent to defraud (the second element of bank fraud). The district court granted Isaiah's

motion for acquittal on both the bank-fraud and money-laundering counts because the government failed to demonstrate that Isaiah had specific intent to defraud or to join a conspiracy.

Isaiah subsequently applied for attorneys' fees and costs pursuant to the Hyde Amendment, Pub. L. No. 105-119, § 617, arguing that the government's prosecution was vexatious, frivolous, or in bad faith. Isaiah's principal contentions were that the government refused to accept her denial of guilt, that the government sought to coerce her into pleading guilty, that the government knew that it was unable to prove that Isaiah had any specific intent, that the government discounted her cooperation with investigators, and that the government accepted guilty pleas from several witnesses at trial who denied having the intent to defraud. The government opposed Isaiah's motion.

The district court denied Isaiah's motion. The district court first determined that the government's case was not frivolous because it was not groundless. The court questioned whether, in hindsight, "it made the correct decision in removing this issue from the jury [because the government presented several facts] . . . . which could reasonably give rise to an inference of guilty knowledge and criminal intent. At the very least, the question of Isaiah's intent was a close one." The court also held that the government was not required to believe Isaiah's claims of innocence or accept her cooperation. The court then determined that the prosecution was not vexatious because the government's position was supported by probable cause. Probable cause existed because the government presented circumstantial evidence to establish her intent. The court also noted that there was no evidence that the government intended to harass Isaiah, even assuming that she did not engage in plea negotiations and did not admit any guilt. Finally, the court determined that the government had not pursued its prosecution in bad faith because its case was supported by probable cause and because Isaiah's innocence was not obvious. Moreover, the court held that there was no reason to question the propriety of the witnesses' guilty pleas, which presumably complied with Fed. R. Crim. P. 11 and were not appealed. The court ended its opinion by determining that there was no evidence to support Isaiah's contention that the government's prosecution was racially motivated. Isaiah now appeals the judgment of the district court.

## II.

The Hyde Amendment permits prevailing federal criminal defendants to recover expenses incurred in defending criminal charges if the position of the United States was "vexatious, frivolous, or in bad faith, unless, the court finds that special circumstances make such an award unjust." Pub. L. No. 105-119, § 617, 111 Stat. 2519 (1997). In deciding a defendant's motion, the district court must analyze the case as a whole, not count by count. *United States v. Heavrin*, 330 F.3d 723, 730 (6th Cir. 2003). The defendant bears the burden of meeting any one of the three grounds under the statute, and acquittal by itself does not suffice. *See United States v. True*, 250 F.3d 410, 424 (6th Cir. 2001). This court has previously stated that the Hyde Amendment "places a daunting obstacle before defendants who seek to obtain attorney fees and costs from the government following a successful defense of criminal charges." *Id.* at 423 (citing *United States v. Gilbert*, 198 F.3d 1293, 1302-03 (11th Cir. 1999)).

This court reviews factual aspects of determinations under the Hyde Amendment for clear error, legal aspects de novo, and discretionary aspects for abuse of discretion. *See True*, 250 F.3d at 422 n.9 (treating all three scopes of review as part of review for abuse of discretion). An abuse of discretion may be found when the district court has used "'an erroneous legal standard . . . [or] when the reviewing court is firmly convinced that a mistake has been made,' i.e., when [it is] left with 'a definite and firm conviction that the trial court committed a clear error of judgment.'" *Id.* (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). Deference to the district court is warranted because that court "has a fresh recollection of the government's conduct that this court's review of the cold record simply cannot provide." *United States v. Skeddle*, No. 00-3195, 2002 WL 2026537, at *3 (6th Cir. Aug. 29, 2002) (per curiam). The district court did not

abuse its discretion in this case because the district court reasonably determined that Isaiah failed to meet her burden of demonstrating that the United States' prosecution was vexatious, frivolous, or brought in bad faith.

## III.

The district court properly determined that the prosecution was not vexatious because Isaiah did not proffer sufficient evidence to demonstrate that the government's position was not supported by probable cause. The government's position is "vexatious" if it is brought "without reasonable or probable cause or excuse," *True*, 250 F.3d at 423, "for the purpose of irritating, annoying, or tormenting the opposing party," *Heavrin*, 330 F.3d at 729. Isaiah argues, without any evidence to support her claim, that the government "knew that Isaiah engaged in no wrongdoing." Because the district court did not abuse its discretion in determining that Isaiah has not demonstrated that the government's position was without probable cause, it is unnecessary to consider whether the government prosecuted Isaiah to harass her.

There was sufficient evidence to demonstrate that the government's position was supported by probable cause. The government presented evidence that Isaiah agreed to negotiate a check to her order written on the account of a business of which she had never heard, that she wrote checks payable to people she had never met, that her involvement allowed her to profit from the funds of the counterfeit check, and that she admitted that the circumstances were suspicious. These circumstantial facts are sufficient to establish probable cause that Isaiah intended to defraud the bank and join the conspiracy. As the Seventh Circuit stated in *United States v. Ryan*, 213 F.3d 347, 350 (7th Cir. 2000), "[i]ntent to defraud can be proven by circumstantial evidence and by inferences drawn from the scheme itself." Indeed, the district court noted that "with the benefit of the transcribed testimony now before it, this court questions whether it made the correct decision in removing this issue from the jury. . . . At the very least, the question of Isaiah's intent was a close one." Moreover, the government was not required to credit Isaiah's denial, and the government was under no duty to accept her assistance with the investigation. Thus, even if the government could not prove its case beyond a reasonable doubt, the government's position was supported by probable cause and therefore was not vexatious.[1]

## IV.

The district court did not abuse its discretion in determining that the prosecution was not frivolous. This court has defined a "frivolous position " as "one lacking a reasonable legal basis or where the government lacks a reasonable expectation of [obtaining] sufficient material evidence by the time of trial." *Heavrin*, 330 F.3d at 729. The government's legal position was reasonable, and the government had a reasonable expectation of proffering sufficient circumstantial evidence of Isaiah's intent at trial.

The government's position that reckless indifference could satisfy the statutes' requirement for specific intent was not frivolous because what constitutes "specific intent" under federal criminal statutes is not entirely clear. The elements of bank fraud under § 1344 are not in dispute. They are that "(1) the defendant must have knowingly executed or attempted to execute a scheme to defraud

---

[1]To bolster its determination that probable cause supported the government's position, the district court noted that a grand jury returned an indictment. We do not rely on this aspect of the district court's reasoning. If the presence of an indictment were determinative of the existence of probable cause for purposes of the Hyde Amendment, the Amendment would not take into account the possibility, for instance, that a prosecutor lied to the grand jury or presented false evidence. Moreover, if the presence of an indictment sufficed, the government would almost always be shielded from paying expenses, contrary to the apparent purpose of the Hyde Amendment. *See United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1184 (9th Cir. 2003).

a financial institution; (2) the defendant must have done so with the intent to defraud; and (3) the financial institution must have been insured by the Federal Deposit Insurance Corporation." *United States v. Reaume*, 338 F.3d 577, 580 (6th Cir. 2003). The charge of conspiracy also requires specific intent. *See United States v. Brown*, 332 F.3d 363, 372 (6th Cir. 2003). Isaiah concedes that reckless indifference can be sufficient to demonstrate that the defendant knowingly executed a scheme to defraud, but she successfully argued in the district court that reckless indifference is not sufficient to prove specific intent to defraud or to join a conspiracy. The government argued that reckless indifference could satisfy the statute's requirement of specific intent.

The government's legal argument was reasonable and has some support in this circuit's case law. For instance, in *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998), this court held that the government could satisfy specific intent under securities- and mail-fraud statutes by proving "[a]lternatively . . . that the defendant was reckless." Moreover, this court held in *United States v. Woods*, 877 F.2d 477, 480 (6th Cir. 1989), that "intent [to defraud under the federal embezzlement statute, 18 U.S.C. § 656,] exists whenever the officer acts knowingly or with reckless disregard of the bank's interests and the result of his conduct injures or defrauds the bank." The court in *Woods* noted that this court in *United States v. Walker*, 871 F.2d 1298, 1305 n.6 (6th Cir. 1989), stated "that the requisite intent to defraud is the same" for sections 1344 and 656. *Woods*, 877 F.2d at 480. These cases demonstrate that, even assuming that the district court correctly determined that the government's evidence of reckless indifference was not sufficient to satisfy specific intent to defraud or join a conspiracy, the government's argument was reasonable and at least arguably supported by this circuit's case law. The district court, accordingly, did not abuse its discretion in determining that the government's position was not frivolous.[2]

Besides having a reasonable legal position for its prosecution of Isaiah, the government also had a reasonable expectation that its circumstantial evidence of intent was sufficient at the time of trial, and thus the government's position was not frivolous. The government prosecuted this case under the reasonable, although ultimately unsuccessful, theory that reckless indifference was sufficient to demonstrate specific intent. The government had sufficient circumstantial evidence for a jury to find beyond a reasonable doubt that Isaiah was recklessly indifferent. Although Isaiah admitted that the entire affair was suspicious, that she did not know of Packaging Materials, and that she did not know Yanni, Alles, or Bynum, she withdrew money from her account and profited from her participation. Moreover, despite Isaiah's argument to the contrary, the government did not act unreasonably by believing that its aforementioned circumstantial evidence could imply that Isaiah harbored specific intent to defraud the bank. The district court held that the government's circumstantial evidence of specific intent was almost enough for a reasonable juror to find beyond a reasonable doubt that Isaiah intended to defraud and join a conspiracy. The district court's conclusion was not "a clear error of judgment." *True*, 250 F.3d at 422 n.9.

Furthermore, the court did not even consider the evidence that, in her statement to investigators, Isaiah misspelled Yanni's name, listed his last name first, and neglected to list the checks payable to Alles and Bynum. This circumstantial evidence can reasonably support the government's position that Isaiah intended to deceive the bank by hindering the investigation, despite Isaiah's argument that she provided the check written to Yanni with his correct name and that it was understandable for her not to remember the names of two men she never knew. Certainly the import of the government's circumstantial evidence was debatable, and a reasonable juror would not be compelled to accept Isaiah's interpretation of the evidence. As we recognized in *Skeddle*, 2002 WL 2026537, at *2, "the Hyde Amendment does not shift to the government the risk of not prevailing always associated with litigating matters of law and fact on which reasonable people can

---

[2]We do not resolve whether evidence of reckless indifference can satisfy the specific intent element. The only issue here is whether the government's legal position was at least reasonable. *See Heavrin*, 330 F.3d at 729.

disagree before courts and juries." The government, therefore, had a reasonable belief that its evidence would be sufficient to support a jury's verdict against Isaiah, and its prosecution was not frivolous.

## V.

The district court did not abuse its discretion in determining that the prosecution was not in bad faith because Isaiah presented insufficient evidence that the government acted with ill will. In *True*, this court defined "bad faith" under the Hyde Amendment as "not simply bad judgment or negligence, but rather . . . the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." 250 F.3d at 423. Isaiah contends that the government knowingly accepted guilty pleas from innocent parties, that the government failed to investigate Haniya Sabir's bank account adequately, and that the government maliciously attempted to convince the jury that the charges against Isaiah did not require any finding of mens rea. These contentions are without merit and fail to establish that the government advocated its position in bad faith.

First, Isaiah's argument that the government attempted to intimidate Isaiah by accepting guilty pleas from witnesses who testified at Isaiah's trial is without merit because there is no reason to presume that the guilty pleas were not valid. Because seven trial witnesses, who pled guilty, testified that they did not have specific intent to defraud, Isaiah argues that the government accepted their guilty pleas knowing that none of these witnesses was guilty. Isaiah alleges that the government accepted the pleas to intimidate Isaiah to plead guilty and serve as a witness against others. Isaiah has offered no evidence that the guilty pleas were accepted in violation of Fed. R. Crim. P. 11 or were later appealed. The district judge noted that he presided over the entering of two of the guilty pleas, that the government submitted statements with all of the elements of the crimes, and that both pleas complied with Rule 11. The government, moreover, had no obligation to accept the denials of the defendants or assume that the circumstantial evidence could not establish intent to defraud in those individual cases. The district court did not err in determining that Isaiah had not demonstrated that the government attempted to intimidate Isaiah by knowingly accepting guilty pleas of innocent persons.[3]

Second, Isaiah's contention that the government failed to investigate adequately the bank account of witness Haniya Sabir fails because Isaiah did not make such an argument in the district court. We do not consider this argument because it is raised for the first time on appeal. *See Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005). Isaiah in no way demonstrated that this court's failure to entertain the issue would cause a miscarriage of justice. *See Lepard v. NBD Bank*, 384 F.3d 232, 238 (6th Cir. 2004). In fact, Sabir did not testify as to any events concerning Isaiah, and her bank account was not central to the government's prosecution of Isaiah in the joint trial.

Finally, Isaiah's argument that the government maliciously attempted to convince the jury that the charges against Isaiah did not require any showing of mens rea is without merit. Isaiah argues that the government sought to mislead the jury by having witness Sabir point out on the government's second redirect examination that her plea agreement did not include any language referring to "intent to defraud." Upon defense counsel's objection, however, the government

---

[3] In one sentence of her appellate brief, Isaiah argues that the government prosecuted her only because, if it had not done so, the defendants who pled guilty would have challenged their convictions as resulting from "disparate treatment." What Isaiah's speculative allegation means is uncertain. In her motion to the district court, Isaiah argued that she would not have been prosecuted had she been Caucasian. To whatever extent Isaiah has argued on appeal that the government was motivated by racial bias and therefore acting in bad faith, Isaiah has waived this undeveloped and unsupported argument. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005).

explained that its question concerning "intent to defraud" on redirect was responding to a question on recross in which defense counsel asked Sabir whether she knew that the check that she deposited was counterfeit. The government argued that Sabir had pled guilty to violating 18 U.S.C. § 513, which requires an intent to deceive, a mental state that is easier to prove than intent to defraud. The district court, after noting that the question of intent was at issue, overruled defense counsel's objection. Thus, the government's question on redirect to Sabir is not evidence that the government sought to mislead the jury because the trial judge, who witnessed the questioning, held that the question was proper and not misleading. Moreover, the district court permitted defense counsel to ask follow up questions to resolve any confusion. The trial court's decision was not a clear error of judgment.

Because Isaiah has presented no evidence that the government prosecuted Isaiah with ill will, the district court did not abuse its discretion in determining that the government's position was not brought in bad faith.

## VI.

For the foregoing reasons, we AFFIRM the judgment of the district court.