NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0023n.06
Filed: January 8, 2008

No. 07-5253

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PATRICIA E. MATTINGLY, and PATRICIA E. MATTINGLY, mother and friend of DERRICK LOGAN MATTINGLY, a minor, | ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) | |
| | ) | |
| WILLIAM LACY HOGE, III, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

BEFORE: BATCHELDER, COLE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiffs Patricia E. Mattingly, individually, and as next friend of her son Derrick Logan Mattingly ("Logan Mattingly"), a minor, appeal the district court's grant of summary judgment in favor of defendant William Lacy Hoge, III in this legal malpractice suit against Hoge. Plaintiffs argue that Hoge, who represented Patricia Mattingly in her divorce from her husband, Joseph M. Mattingly, was professionally negligent in failing to secure a qualified domestic relations order ("QDRO") to protect Logan's right to the proceeds of Joseph's welfare benefit plan. Plaintiffs further argue, even assuming that Hoge did obtain a QDRO, that he was professionally negligent in not sending this QDRO to Metropolitan Life Insurance Company, the administrator of Joseph M.

Mattingly's welfare benefit plan. For the reasons stated below, we affirm the judgment of the district court.

I.

In 1987, in Jefferson County, Kentucky, William Lacy Hoge, III represented Patricia Mattingly in her divorce from Joseph M. Mattingly, an employee of General Electric. On December 17, 1987, the Jefferson County Circuit Court issued "Findings of Fact, Conclusions of Law and Judgment, No. 87CI03367" ("divorce decree") in the matter. This judgment required that "the respondent [Joseph M. Mattingly] shall designate the parties' infant child [Logan Mattingly] as his primary beneficiary on any life insurance on his life currently maintained through his employment at General Electric. Said beneficiary designation shall continue until the child's eighteenth (18th) birthday." It is undisputed that Hoge did not provide a copy of the divorce decree to either General Electric or its ERISA plan administrator, Metropolitan Life Insurance Company ("MetLife").

Eight years later, in June of 1995, Joseph married Anita Mattingly. On March 4, 1998, Joseph Mattingly filed a GE Benefits Plan Beneficiary Designation, naming Anita as the primary beneficiary and then nine-year old Logan as one of two contingent beneficiaries, in contravention of the divorce decree. Joseph Mattingly died on November 28, 2002. On December 2, 2002, Patricia filed a claim for the policy proceeds on behalf of Logan pursuant to the provisions of the divorce decree. Anita Mattingly filed a competing claim on December 19, 2002.

MetLife, in accordance with federal law, was initially responsible for determining who was the legitimate beneficiary. *See* 29 U.S.C. §§ 1056(d)(3)(G)(i)(II), 1104(a), 1132(a)(3) & 1144. On March 11, 2003, MetLife determined that the divorce decree satisfied the requirements of a QDRO, and subsequently denied Anita Mattingly's claim. Patricia Mattingly claims to never have been notified of this decision.[1]

On May 2, 2003, in response to MetLife's determination, Anita Mattingly claimed that the QDRO was invalid and again sought administrative review. In response to this renewed claim, on June 6, 2003, MetLife filed a Complaint for Interpleader in the District Court for the Southern District of Indiana, seeking resolution of the issue through the federal court system. On June 2, 2004, Patricia and Anita Mattingly reached an agreement whereby they would split the insurance proceeds evenly, with each of them receiving $58,129.11 of the $116,258.22 total.

Plaintiffs filed suit against Hoge on May 20, 2005, alleging that Hoge breached his professional duties to Patricia and Logan Mattingly. Their complaint alleged specifically:

> 10. That the Defendant, William L. Hoge, III, failed to protect the interest of Patricia E. Mattingly and [Logan Mattingly], by securing a Qualified Domestic Relations Order.
>
> * * *
>
> 12. That the Defendant, William L . Hoge, III, failed to exercise ordinary skill and knowledge in his representation of the Plaintiff, Patricia L. Mattingly, by negligently

---

[1]This letter is absent from both the district court's and this court's record. It is, however, referenced in the May 2, 2003, letter from Anita Mattingly's attorney to MetLife, appealing the latter's decision in favor of Patricia Mattingly. MetLife reiterates its denial of Anita Mattingly's claim, quite succinctly, in paragraph 18 of its Complaint for Interpleader.

failing to secure a Qualified Domestic Relations Order on her behalf thereby causing her to lose more than $80,000.00 of the proceeds paid into the United States District Court, Southern District of Indiana, by Metropolitan Life Insurance Company.

On June 30, 2006, after discovery by the parties, Hoge moved for summary judgment, contending that the divorce decree was a valid QDRO and supporting his motion with the testimony of two expert witnesses. Plaintiffs responded to Hoge's motion and supplied the affidavit of expert Kenneth H. Baker, albeit three months past the expert disclosure deadline. In this response, plaintiffs first raised the argument that Hoge breached his professional duty of care by failing to deliver the divorce decree to MetLife. On January 23, 2007, the district court granted Hoge's motion for summary judgment, ruling that (1) the divorce decree was a valid QDRO, (2) Hoge did not have a duty to notify MetLife of the divorce judgment, and (3) Logan Mattingly's right to the proceeds of the insurance policy was absolute, and plaintiffs could not claim as damages an amount Patricia Mattingly voluntarily chose to relinquish. This appeal followed.

II.

We review de novo a district court's grant of summary judgment. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). "The decision below may be affirmed only if the pleadings, affidavits, and other submissions show 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Thomas v. Miller*, 489 F.3d 293, 297 (6th Cir. 2007) (quoting FED. R. CIV. P. 56(c)). A dispute over a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, we must construe the evidence and draw all reasonable inferences in favor of

the nonmoving party. *Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 497 (6th Cir. 2007).

Because plaintiffs claim that Hoge was professionally negligent in failing to secure a QDRO, we must ultimately determine whether the 1987 divorce decree constituted a qualified domestic relations order. Employee pension and welfare benefit plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001, *et seq*. ERISA generally prevents the distribution, assignment, or garnishment of the benefits owed to a plan participant. However, an exception exists for qualified domestic relations orders, which allow payment to an alternate payee. 29 U.S.C. §§ 1056(d)(1)-(3). A QDRO is an order or decree that creates or recognizes the existence of an alternate payee's right to receive all or a portion of a participant's benefits payable under an ERISA qualified benefit plan. 29 U.S.C. § 1056(d)(3)(B).

We must first decide whether the divorce decree is properly categorized as a "domestic relations order." As stated by Congress:

> [T]he term "domestic relations order" means any judgment, decree, or other order (including approval of a property settlement agreement) which (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a participant, and (II) is made pursuant to a State domestic relations law (including a community property law).

29 U.S.C. § 1056(d)(3)(B)(ii). We conclude that the divorce decree is clearly a domestic relations order, as defined in § 1056(d)(3)(B)(ii). Not all domestic relations orders, however, are QDRO's, and in order to be properly considered a *qualified* domestic relations order, the order must satisfy certain additional criteria:

> A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order, (ii) the amount or percentage of the participant's benefits to be paid by the plan to each alternate payee, or the manner in which such amount or percentage is to be determined, (iii) the number of payments or period to which such order applies, and (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C). Thus, our second inquiry is whether the divorce decree satisfies these additional requirements.

As stated above, the divorce decree ordered that "[t]he respondent [Joseph M. Mattingly] shall designate the parties' infant child [Logan Mattingly] as his primary beneficiary on any life insurance on his life currently maintained through his employment at General Electric. Said beneficiary designation shall continue until the child's [Logan Mattingly's] eighteenth (18th) birthday." This statement satisfies sections (ii)-(iv) of 29 U.S.C. § 1056(d)(3)(C). Specifically, as primary beneficiary, Logan Mattingly would receive 100% of the benefits payable under the policy. Further, because the life insurance policy was "to be paid in a lump sum on decedent's death and not payments from a pension plan, there was no need to specify the number of payments or periods for which the order applies." *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 422 (6th Cir. 1997). Lastly, the decree stated clearly that the plan at issue was Joseph Mattingly's General Electric life insurance policy.

Plaintiffs contend that the divorce decree is not a QDRO because the decree did not specify the mailing address of Patricia and Logan Mattingly accurately, as required under 29 U.S.C. § 1056(d)(3)(C)(i). Specifically, they argue that the address identified in the judgment – 2613 Shuck

Lane, Louisville, Kentucky – is the non-marital property of Joseph Mattingly and not the residence of Patricia and Logan Mattingly. The divorce decree states that Patricia and Logan Mattingly were to be granted "use and occupancy of [2613 Shuck Lane] for a period of eighteen (18) months from the date of entry of this judgment. . . ." Plaintiffs posit that the divorce decree does not state whether Patricia and Logan actually resided at 2613 Shuck Lane, whether they had in the past, or whether they would in the future. Plaintiffs thus assert that because the divorce decree allegedly does not satisfy the requirements of § 1056(d)(3)(C)(i), it cannot be a QDRO.

We do not find plaintiffs' narrow reading of 29 U.S.C. § 1056(d)(3)(C)(i) to be persuasive. The divorce decree identified Logan Mattingly as the primary beneficiary and stated that he and his mother would have the right to occupy 2613 Shuck Lane. Plaintiffs have not contended that they lived anywhere else during the eighteen month period after the divorce or otherwise argued that the address provided was not, in fact, their residence at the time of the divorce judgment's entry. If the address provided in the decree was inaccurate, Patricia Mattingly, being a party to the divorce action, had the opportunity to rectify it. There is no evidence to suggest that she took any steps to modify the included address.

Further, the language of 29 U.S.C. § 1056(d)(3)(C)(i) does not require the decree to include the residential address of the beneficiary; it merely requires his mailing address.[2] Because 2613

---

[2]Defendant contends that 29 U.S.C. § 1056(d)(3)(C)(i) does not require a current mailing address, merely a last known mailing address. This is incorrect. The "last known mailing address" portion of 29 U.S.C. § 1056(d)(3)(C)(i) refers only to the mailing address of the plan participant, not the beneficiaries.

Shuck Lane was under the use and care of plaintiffs during the eighteen-month period after the entry of the divorce decree, it is presumed that they would have access to the location's mailbox regardless of whether they chose to live there. This is sufficient to satisfy the requirements of 29 U.S.C. § 1056(d)(3)(C)(i). Indeed, a tribunal can only provide the most accurate address it is given. It cannot be asked to definitively guarantee that the beneficiary will reside at the same address and receive any and all mailings sent to the location identified in the decree. To require such is to demand clairvoyance on the part of the state court. Moreover, as we have noted elsewhere, when a divorce decree lacks no essential information and is clear enough to determine what the decree intended, it is specific enough to substantially comply with ERISA's requirements for a QDRO. *Marsh*, 119 F.3d at 422. Given this, we hold that the December 1987 divorce decree is a QDRO under 29 U.S.C. § 1056(d)(3)(C).

### III.

Plaintiffs additionally argue that even if the divorce decree was a valid QDRO, Hoge was nevertheless professionally negligent because he failed to send a copy of the divorce decree to MetLife. Plaintiffs, however, do not set forth this additional claim in their complaint. Because it was not pleaded, we decline to reach the merits of this second claim. *See Perez v. Oakland County*, 466 F.3d 416, 429-30 (6th Cir. 2006) (noting that we generally refuse to consider an argument raised for the first time on appeal); *see also United States v. Isaiah*, 434 F.3d 513, 522 (6th Cir. 2006) (same) (citing *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005)).

IV.

For the above reasons, we affirm the decision of the district court.