**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0243n.06

No. 16-3984

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Apr 28, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| VALUELAND AUTO SALES, INC., | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before: BOGGS, MOORE, and McKEAGUE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant Valueland Auto Sales, Inc. ("Valueland") appeals the district court's denial of its motion for attorney fees under the Hyde Amendment. The United States charged Valueland and two of its officers with structuring cash deposits to cause financial institutions to fail to file required Currency Transaction Reports ("CTRs"), and with filing false IRS forms. After multiple negotiations, the government voluntarily dismissed several of the counts and entered into a deferred-prosecution agreement with Valueland. The agreement was set to expire on August 2, 2015, and on that date, in accordance with the agreement, the government voluntarily dismissed all remaining claims against Valueland. Valueland subsequently moved for attorney fees and expenses under the Hyde Amendment. The district court denied the motion, and this appeal followed.

For the following reasons, we **AFFIRM** the district court's denial of defendant's motion for attorney fees under the Hyde Amendment.

## I. BACKGROUND

Valueland is a used-automobile dealer operating in Columbus, Ohio. According to Valueland, it operates a "buy-here," "pay-here" car lot that generally sells to customers with poor credit. R. 153–1 (Benit Aff. at 1) (Page ID #1000). According to Valueland, it is located in a "high crime area" of Columbus. *Id.* at 1 (Page ID #1000). Because most of the customers pay their weekly or biweekly payments in cash, Valueland asserts that it had a companywide policy of taking large cash payments to the bank as soon as possible, typically at the beginning and end of each day, to avoid keeping large sums of cash at the dealership. *Id.* at 2 (Page ID #1001). Prior to 2009, when "Valueland's customer base was much smaller, the cumulative sum of Valueland's deposits [on a given day] rarely exceeded $10,000." *Id.* at 2 (Page ID #1001).

These deposits eventually caught the attention of the Internal Revenue Service ("IRS"). Specifically, the IRS suspected Valueland of purposefully structuring cash deposits at banks to avoid the filing of CTRs. Financial institutions are required to file CTRs with the Department of the Treasury each time they engage in a currency transaction in excess of $10,000. 31 U.S.C. § 5313. The IRS launched an investigation in 2010, and obtained a warrant in July 2011 to search Valueland and the content of its computers. In June 2013, a grand jury charged Valueland with twenty-two counts of structuring cash deposits to cause financial institutions to fail to file required CTRs. R. 1 (Indictment at 2–3) (Page ID #2–3). The indictment also charged co-owner Ron Benit with four counts of structuring. *Id.* at 5–6 (Page ID #5–6). In October 2014, a superseding indictment added two new counts against Valueland and co-owner Jerry S. Browner for filing false IRS Forms 8300 (Report of Cash Payments Over $10,000 Received in Trade or

Business) regarding automobiles sold at Valueland. R. 54 (Superseding Indictment at 7–8) (Page ID #355–56).

On January 28, 2015, upon request from the government, the district court dismissed fourteen counts of the superseding indictment. R. 113 (Dist. Ct. Order at 1) (Page ID #679). By the following week, a deal was struck. All charges against Benit were dropped, and the government issued a superseding misdemeanor information against Browner, who pleaded guilty. R. 158 (Dist. Ct. Order at 2–3) (Page ID #1285–86). Finally, the parties entered into a deferred-prosecution agreement. *Id.* at 3 (Page ID #1286). Under this agreement, Valueland "acknowledge[d] that the United States gathered evidence that the government believed demonstrated" that Valueland had, at various times, filed false Forms 8300 and structured cash deposits to cause financial institutions not to file CTRs. R. 121 (Deferred Prosecution Agreement at 1) (Page ID #693). However, Valueland "denie[d] that it engaged in the charged conduct and denie[d] that it violated Title 31." R. 121–1 (Deferred Prosecution Agreement Statement of Facts at 1) (Page ID #698). Valueland also agreed not to commit any crimes and "to cooperate fully and actively with the [government]" by disclosing certain information, attending meetings with the government, securing accurate testimony from former and current officers and employees, and responding to document requests or related inquiries. R. 121 (Deferred Prosecution Agreement at 2) (Page ID #694). The deferred-prosecution agreement was to remain in effect until August 2, 2015. *Id.* At that time, in accordance with the agreement, the government requested that the remaining counts against Valueland be dismissed with prejudice. R. 152 (Dist. Ct. Order at 1) (Page ID #990); R. 121 (Deferred Prosecution

Agreement at 3) (Page ID #695). The district court entered an order of dismissal on August 5, 2015. R. 152 (Dist. Ct. Order at 1) (Page ID #990).

On September 4, 2015, Valueland moved for an award of attorney fees pursuant to the Hyde Amendment. R. 153 (Mot. for Atty Fees at 1) (Page ID #992). The district court denied Valueland's motion and held that Valueland was not a prevailing party for the purposes of the Hyde Amendment. R. 158 (Dist. Ct. Order at 8) (Page ID #1291). This appeal followed.

## II. ANALYSIS

### A. Standard of Review

The Hyde Amendment permits courts to award attorney fees and expenses to federal criminal defendants if two requirements are met. First, the defendant must be a "prevailing party." Pub. L. No. 105–119, § 617, 111 Stat. 2440 (1997). Second, the court must find "that the position of the United States was vexatious, frivolous, or in bad faith." *Id.* The defendant bears the burden of establishing that he is entitled to fees under the Hyde Amendment, which "places a daunting obstacle before defendants who seek to obtain attorney fees and costs from the government following a successful defense of criminal charges." *United States v. Isaiah*, 434 F.3d 513, 519 (6th Cir. 2006) (quoting *United States v. True*, 250 F.3d 410, 423 (6th Cir. 2001)). "This court reviews factual aspects of determinations under the Hyde Amendment for clear error, legal aspects de novo, and discretionary aspects for abuse of discretion." *Id.* Ordinarily, "we will only overturn a district court's denial of a request for fees under the Hyde Amendment for an abuse of discretion." *United States v. Skeddle*, 45 F. App'x 443, 446 (6th Cir. 2002).

## B. "Prevailing party" status

Valueland argues that the district court abused its discretion by holding that Valueland was not the prevailing party and therefore was not entitled to attorney fees under the Hyde Amendment. Although Valueland was not acquitted, it argues that the district court's dismissal of the superseding indictment with prejudice "undoubtedly materially altered the position of the parties," and that it is therefore entitled to relief. Appellant's Br. at 18.

Whether a defendant who, subsequent to its execution of a deferred-prosecution agreement, obtains a voluntary dismissal with prejudice is a "prevailing party" for the purposes of the Hyde Amendment remains an open question in this circuit. *See United States v. Alpha Medical*, 102 F. App'x 8, 10 (6th Cir. 2004) ("There is no clear precedent, particularly in this circuit, as to whether a plaintiff's voluntary dismissal with prejudice, motivated by pure practicality rather than by any merit in the defendant's position, makes the defendant a 'prevailing party' for purposes of an award of costs"); *see also Bridgeport Music, Inc. v. London Music, U.K.*, 226 F. App'x 491, 494–95 (6th Cir. 2007) (declining to decide whether voluntary dismissal with prejudice confers "prevailing party" status under the Copyright Act, 17 U.S.C. § 505). We need not decide the issue in this case because, regardless of its status, Valueland cannot establish that the government's position in this case was vexatious, frivolous, or in bad faith.

## C. Conduct of prosecution

To qualify for attorney fees under the Hyde Amendment, it is not enough to show that the prosecution was unsuccessful. *Skeddle*, 45 F. App'x at 445. A defendant must establish that the

prosecution was "vexatious, frivolous, or in bad faith." *Id.* (citation omitted). "The government's position is vexatious if it is brought without reasonable or probable cause or excuse, for the purpose of irritating, annoying, or tormenting the opposing party." *Isaiah*, 434 F.3d at 519 (internal quotation marks and citations omitted). A position is frivolous if it lacks "a reasonable legal basis or where the government lacks a reasonable expectation of [obtaining] sufficient material evidence by the time of trial." *Id.* at 520 (internal quotation marks omitted) (alteration in original). Finally, "bad faith" requires more than mere negligence, but rather "a state of mind affirmatively operating with furtive design or ill will," or "the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Id.* at 522 (internal quotation marks omitted). As we have previously stated, the Hyde Amendment is not aimed generally at cases that the government loses, "but instead at instances of 'prosecutorial misconduct,' where the government had undertaken obviously groundless positions . . . or positions intended solely to harass defendants rather than to vindicate the rule of law." *Skeddle*, 45 F. App'x at 446 (quoting *United States v. Gilbert*, 198 F.3d 1293, 1304 (11th Cir. 1999)).

Valueland cannot establish that the government's prosecution satisfies any of these elements. Its primary contention is that because the government knew of the nature of its "buy-here," "pay-here" dealership that engaged primarily in cash transactions, the government *should have known* that Valueland lacked the intent to commit any of the charged offenses. R. 153 (Mot. for Fees at 3–4) (Page ID #994–95). Valueland does not assert, and points to no evidence that suggests, that the government in fact knew it could not prevail on these charges. In fact, in the deferred-prosecution agreement, Valueland explicitly "acknowledge[d] that the United States

6

gathered evidence that *the government believed*" would support its claims. R. 121 (Deferred Prosecution Agreement at 1) (Page ID #693) (emphasis added). Moreover, Benit's counsel stated in an affidavit that he believed that the government believed that the theory of the prosecution involved selling cars to criminals for cash and laundering money through Valueland, and that "Mr. Browner's past and his alleged connection to criminals were unquestionably at the center of, and the *sole motivation* for the Government's entire investigation." R. 153–4 (Peterson Aff. at 3) (Page ID #1151) (emphasis added). Absent some allegation of nefarious purpose or intent, Valueland cannot establish that the prosecution was carried out in bad faith, or that the government's position was vexatious and carried out "for the *purpose*" of harassing or annoying Valueland. *Isaiah*, 434 F.3d at 519 (emphasis added).

Nor can Valueland establish that this action was frivolous. The government had a reasonable basis for pursuing this prosecution and properly withdrew its claims as it obtained additional discovery. Valueland does not dispute that it made numerous deposits of less than $10,000 at various financial institutions. *See* R. 153–1 (Benit Aff. at 7–14) (Page ID #1006–13). Whether intentional or not, these deposits could support a reasonable inference that the payments were structured in a manner that would cause financial institutions not to file CTRs. Moreover, these payments could support a reasonable expectation that the circumstantial evidence in this case was sufficient to establish not just that structuring occurred but also that Valueland carried out these payments with knowledge and intent. *See United States v. Sutton*, 387 F. App'x 595, 599 (6th Cir. 2010) (stating the elements of structuring).

None of Valueland's arguments are sufficient to establish that the government's position was frivolous. Valueland states that the government identified a witness who it earlier claimed would not be called, and argues that this was a "prime example" of the government's improper behavior. Reply Br. at 21. This is unpersuasive. The government properly identified this witness prior to trial, putting all defendants on notice that she could be called. Valueland has failed to explain why this witness, who was known to defense counsel to be potentially linked to this case, demonstrates that the government's position was vexatious, frivolous, or in bad faith.

Although Valueland presented an affidavit from its officers to rebut the claim that it intended to violate the law, the government was not required to take Valueland at its word, or to expect that a jury would accept Valueland's theory of the case. *See Isaiah*, 434 F.3d at 521 (holding that the government's position was supported where "the import of the government's circumstantial evidence was debatable, and a reasonable juror would not be compelled to accept [defendant's] interpretation of the evidence"). On appeal, Valueland argues that it was clear, from the nature of its business and from Benit's relationship with banking institutions, that Valueland lacked the intent to violate the law. Reply Br. at 15–17. It also states that additional information would have revealed the lack of intent, including Valueland's accounting-software records that balanced with bank deposit slips, prior deposit activity that corroborated Valueland's explanation for the various deposits, consistent testimony from employees that neither Benit nor Browner ever sought to avoid the filing of CTRs, and the lack of motive for either Valueland or its employees or officers to take part in this crime. *Id.* at 19–21. While this evidence may

bolster the case that Valueland was innocent, it does not demonstrate that the government's position was vexatious, frivolous, or in bad faith.

A defendant seeking Hyde Amendment fees must do more than present evidence of its innocence. "[T]he Hyde Amendment does not shift to the government the risk of not prevailing always associated with litigating matters of law and fact on which reasonable people can disagree before courts and juries." *Skeddle*, 45 F. App'x at 446. Where, as here, a defendant presents nothing more than evidence undermining the prosecution's case, he has failed to demonstrate that the position was "vexatious, frivolous, or in bad faith," and therefore is not entitled to fees under the Hyde Amendment.

Valueland argues that we should remand this question to the district court, which declined to address the substantive merits of Valueland's claim that the government's position was "vexatious, frivolous, or in bad faith." It points to numerous cases where we have "repeatedly and universally recognized that where . . . the District Court failed to address the merits of a fee request because it mistakenly determined that the claimant was not a prevailing party, remand to the District Court for an initial determination of the substantive merits is the proper relief." Reply Br. at 12. As a general matter, Valueland is correct. We have previously recognized that "[t]he district court, having conducted the entire trial and witnessed the government's case, is in a far superior position to evaluate whether the government's position was vexatious, frivolous, or in bad faith." *Skeddle*, 45 F. App'x at 446. In *United States v. Heavrin*, 330 F.3d 723, 731 (6th Cir. 2003), we held that where the district court had determined that some, but not all, of the counts against defendant were frivolous, it was necessary to assess

whether the case as a whole could also be judged as such. Because the defendant had raised a claim that the conduct met the standards set by the Hyde Amendment, we remanded the case to allow the district court to determine whether the case as a whole was frivolous. *Id.* As a general rule, therefore, where determination of the propriety of the government's position requires an inquiry into the facts surrounding the conduct of the case, a district court should review that question in the first instance. *See id.*

But where, as here, the defendant fails to state a claim that, if proven true, would be sufficient to establish that the government position was vexatious, frivolous, or in bad faith, a factual determination as to the veracity of those claims is unnecessary, and we may decide the question as a matter of law.[1] Because Valueland's assertions do nothing more than bolster its claim of innocence, we hold that it is not entitled to attorney fees under the Hyde Amendment.

### III. CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's denial of Valueland's motion for attorney fees under the Hyde Amendment.

---

[1]Several of the cases cited by Valueland involve requests for attorney fees under different statutes, and are therefore inapposite. *McQueary v. Conway*, 614 F.3d 591, 597 (6th Cir. 2010) (regarding fees under 42 U.S.C. § 1988); *Bronco's Entm't, Ltd. v. Charter Twp. of Van Buren*, 214 F. App'x 572, 575 (6th Cir. 2007) (same); *Thoroughbred Software Int'l v. Dice Corp.*, 488 F.3d 352, 361 (6th Cir. 2007) (regarding fees under the Copyright Act). Unlike the Hyde Amendment, these statutes commit the decision to award fees to the discretion of the district court, so long as the requesting party is the "prevailing party." *See* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."); 17 U.S.C. § 505 ("In any civil action under [the Copyright Act], the court in its discretion may . . . award a reasonable attorney's fee to the prevailing party . . . .").